J.S20034/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS PAUL MCPHERSON, | : | |
| | : | |
| Appellant | : | No. 1450 WDA 2013 |

Appeal from the Judgment of Sentence August 6, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division No(s).: CP-02-CR-0011475-2012

BEFORE: GANTMAN, P.J., DONOHUE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:              **FILED OCTOBER 6, 2014**

Appellant, Thomas Paul McPherson, appeals from the judgment of

sentence entered in the Allegheny County Court of Common Pleas following

his bench convictions for terroristic threats and harassment.[1]  The victims in

this case were the mayor and chief of police of Millvale.  Appellant argues

the court erred in admitting audio recordings of voice messages, the

evidence was insufficient to establish terroristic threats, and the court

abused its discretion in imposing a probation term banning him from the

town of Millvale.  We affirm the convictions but vacate the portion of his

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2706(a)(1), 2709(a)(4).  Appellant was also convicted of
possession of marijuana, 35 Pa.C.S. § 780-113(a)(31).

sentence banning him from Millvale.

The trial court summarized the underlying facts as follows:

> [T]he credible facts presented at trial demonstrated that [Appellant] was a resident of Millvale, Pennsylvania. For some reason, he developed a strong dislike for the local mayor and the police department of that town. [Appellant] and his family had numerous interactions with the Millvale Police over a period of time. Between 2010 and 2012, [Appellant] sent emails to a neighboring police chief and left voice mails for the mayor and police chief of Millvale voicing his extreme displeasure with events occurring in Millvale. The voice messages were vile, profane and threatening.

Trial Ct. Op., 12/11/13, at 2. The trial court further described the messages as "racist and vulgar." *Id.* at 4. The court cited the following portion of one voice message to Police Chief Derek Miller:

> But I just you know, got gangs running around your house, I don't know who this or this town, I don't know who this [f'—n] Hyatt guy is but uhh gee it sure is gonna be fun. Ohh, and by the way, when you come to arrest me, they'll be going to your [f'—n] house. Ok, so uh you know, I just want to let you know that, that just send me my [f'—n]charges in the mail.

*Id.*

The case proceeded to a non-jury trial on May 8, 2013. The Commonwealth introduced recordings and transcripts of the voice messages. Appellant did not testify or present any evidence. The trial court found Appellant guilty of one count of terroristic threats, two counts of harassment, and one count of possession of marijuana. On August 6, 2013, the court imposed a sentence of two years' probation for terroristic threats.

As a part of Appellant's probation, the court ordered that Appellant may not enter Millvale.[2] Appellant did not file a post-sentence motion. Appellant took this timely appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

In his first issue,[3] Appellant asserts the trial court erred in admitting into evidence recordings of telephone voice mail messages he purportedly left for Police Chief Miller. He asserts there was no proper foundation because the Commonwealth failed to identify the recordings as true and correct reproductions of the original messages, and that the Commonwealth did not present evidence as to their chain of custody, authenticity, and manner of transcription. Additionally, Appellant complains the court accepted Mayor Vincent Cinski's testimony that he was sufficiently familiar with Appellant's voice. We find no relief is due.

We consider the standard of review:

> With regard to evidentiary challenges, it is well established that "[t]he admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that

---

[2] At the sentencing hearing, while imposing a probation sentence of two years, the court stated he was banning Appellant from Millvale "for the next year." N.T. Sentence H'rg, 8/6/13, at 15. The sentencing order, however, made no mention that this particular condition had a different time limit than the overall probation sentence. *See* Order of Sentence, 8/6/13.

[3] For ease of disposition we have reordered Appellant's issues.

> is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error."

**Commonwealth v. Serrano**, 61 A.3d 279, 290 (Pa. Super. 2013) (citation omitted).

Pennsylvania Rule of Evidence 901, "Authenticating or identifying evidence," provides in pertinent part:

> **(a) In General.** To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
>
> **(b) Examples.** The following are examples only--not a complete list--of evidence that satisfies the requirement:
>
> \* \* \*
>
> (5) *Opinion About a Voice.* An opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording— based on hearing the voice at any time under circumstances that connect it with the alleged speaker.

Pa.R.E. 901(a), (b)(5).

In **Serrano**, this Court considered a claim that there was no proper foundation for the admission of recordings of telephone conversations, because the Commonwealth failed to identify one of the voices in the recording as that of the defendant. **Serrano**, 61 A.3d at 284, 290. Specifically, the defendant argued that only one witness identified his voice and no other witnesses corroborated that identification. **Id.** at 290. This

Court found no relief was due, citing Rule of Evidence 901(b)(5).[4] *Id.* We reasoned that the witness had testified he came to learn it was the defendant's voice because the telephone number was subscribed to the defendant at his mother's address, and the witness had previously spoken with the defendant and "it was the same voice." *Id.* at 291.

At trial, the Commonwealth played one of the phone messages and Mayor Cinski identified the speaker in the recording as Appellant. N.T. Trial, 5/8/13, at 51. Appellant concedes on appeal that Mayor "Cinski testified that he knew [A]ppellant 'from the town,'" "had received 'many' voice mail messages from [A]ppellant" on his Borough voice mail system, and "he had heard [A]ppellant's voice '[h]undreds' of times." *See* Appellant's Brief at 23 (citing N.T. at 44, 45). Furthermore, as the Commonwealth notes, Police Chief Miller testified he had known Appellant for fifteen to sixteen years, "[o]ccasionally [ran] into him," and prior to receiving his voice mail messages in January of 2012, had heard Appellant's voice fifteen to twenty times. *See* N.T. Trial at 81, 82; Commonwealth's Brief at 25. Although there was no testimony that the voice mail messages originated from a telephone number linked to Appellant, like that in *Serrano*, we agree with the trial court that the Commonwealth established the speaker in the voice

---

[4] The *Serrano* Court also considered Rule 901(b)(6), which pertains to telephone conversations. *See Serrano*, 61 A.3d at 290-91; Pa.R.E. 901(b)(6). That subsection does not apply in the instant case, as the recording was of Appellant's voice mail message, and not a conversation between two people.

mail messages was Appellant. *See* Pa.R.E. 901(b)(5); *Serrano*, 61 A.3d at 290-91; Trial Ct. Op. at 7.

With respect to Appellant's claim concerning the chain of custody, Mayor Cinski testified that he gave tapes of Appellant's voice mail messages to Chief Miller. N.T. Trial at 48. Chief Miller testified that he saved Appellant's messages left on his voice mail system because "they could be criminal as far as harassment and threatening [sic]." *Id.* at 83. Appellant argued extensively at trial that the Commonwealth did not authenticate the recordings because it did not present evidence of how copies of the voice messages were made from the voice mail system or how they were preserved or kept in evidence. *Id.* at 50, 90-91. The trial court overruled Appellant's objections, reasoning that the witnesses—Mayor Cinski and Chief Miller—heard the recordings and testified that they were the same as the voice messages they received. *Id.* at 91.

We agree with the trial court's reasoning that the authenticity of the recordings was established by Mayor Cinski's testimony that the recording was "the same voice mail message" he received in January of 2012. *See* Trial Ct. Op. at 7; N.T. Trial at 51, 90. Additionally, State Trooper Pierre Wilson testified that Investigator Timothy Cross took "the messages from the machine," although Trooper Wilson did not know when. N.T. Trial at 68. The tapes of the messages were stored "in the DAIU evidence room," and Investigator Cross and the District Attorney's investigations unit provided

the CDs containing the audio recordings to Trooper Wilson. *Id.* at 62-63. In light of all the foregoing evidence, we decline to grant relief on Appellant's claim that the recordings were inadmissible because they were not properly authenticated.

In Appellant's next two issues, he challenges the sufficiency of the evidence. First, he argues the evidence was not sufficient for terroristic threats because the telephone message to the police chief did not include a specific threat. Appellant maintains that instead, the message merely conveyed "that Chief Miller has 'gangs' running around his house," and "they"—meaning the gangs—will be going to "the Chief's house when the police come to arrest Appellant." Appellant's Brief at 14. Appellant asserts that he never claimed to know who is in or controls the gangs. He also points out that he "[i]n fact . . . went out of his way to state that he was 'looking for **legal** ways to retaliate against the cops, while comparing his planned behavior to that of his uncle who 'put 44 shells into a cop's house and they said [sic] that was illegal[.]" *Id.* at 15. Appellant emphasizes that Chief Miller "admitted that Appellant never threatened him or his family" and "the victims, by their own admissions, never believed that their personal security was threatened." *Id.* at 15, 16. We find no relief is due.

We note the relevant standard of review:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution

the benefit of all reasonable inferences to be drawn from the evidence."

> "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." . . . Significantly, "[we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed."

**Commonwealth v. Sinnott**, 976 A.2d 1184, 1187 (Pa. Super. 2009) (citations omitted), *aff'd in part & rev'd in part*, 30 A.3d 1105 (Pa. 2011).[5]

Appellant was convicted under the following subsection of the terroristic threats statute:

> A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
>  (1) commit any crime of violence with intent to terrorize another[.]

18 Pa.C.S. § 2706(a)(1). This Court has explained:

> Based on this definition, "the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." The harm sought to be avoided is the psychological distress that follows an invasion of the victim's sense of personal security. Consequently, "[n]either the [defendant's] ability to carry out the threat nor [the victim's belief] that it will be carried out is an

---

[5] In **Sinnott**, the Supreme Court affirmed the Superior Court's affirmance of the defendant's terroristic threats conviction, but reversed the Superior Court's reversal of the ethnic intimidation conviction. **Sinnott**, 30 A.3d at 1107, 1111.

essential element of the crime." Similarly, "[i]t is unnecessary for an individual to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." . . .

*Sinnott*, 976 A.2d at 1188.

Here, the trial court opined that Appellant's "statements were intended to relay a message to Chief Miller that [he] was advising Chief Miller that when the police come to arrest him[,] he would send people to Chief Miller's house to harm Chief Miller's family." Trial Ct. Op. at 4. The court also cited Appellant's statement that he "can't wait till we're [f'—ng] shooting at each other dude." *Id.* We reject Appellant's characterization of his message as lacking in any "promise [of] further action." *See* Appellant's Brief at 15. Instead, when considering Appellant's message as a whole, it conveyed a message that he would retaliate against any arrest by directing "gangs" to the chief's home. Thus, we agree with the court's conclusion that these statements were direct threats to Chief Miller or "[a]t the very least . . .were indirect threats to commit a crime of violence with the intent to terrorize Chief Miller." *See* Trial Ct. Op. at 4. Furthermore, Appellant's contention that he did not articulate a specific crime is meritless, as such conduct is not required to establish terroristic threats. *See Sinnott*, 976 A.2d at 1188.

Additionally, Appellant's claim, that Police Chief Miller "admitted that Appellant never threatened him or his family," is disingenuous. *See* Appellant's Brief at 16 (citing N.T. Trial at 105). The testimony cited by

Appellant was in response to defense counsel's questions of whether Appellant threatened the police chief when the chief saw Appellant driving around town. N.T. Trial at 104-05 (Chief Miller testifying, "He would not threaten me. He would drive by and make comments out the window or— [interrupted by defense counsel]."). *Id.* at 105. For the foregoing reasons, we find no relief due on Appellant's claim that his messages did not contain threatening language. *See* 18 Pa.C.S. § 2706(a)(1).

Appellant's second sufficiency claim challenges both his terroristic threats and harassment convictions. He avers his telephone messages were protected speech under the First Amendment to the United States Constitution because, although containing profanity, they were legitimate expressions of his opinions of the public officials' job performance. Specifically, Appellant avers, he "was concerned for the safety of his son" and the messages were meant to convey his belief, "whether rightly or wrongly, that both the Mayor and Police Chief were failing in their efforts to protect [Appellant's] son." Appellant's Brief at 21. Appellant further alleges that because the police chief and mayor "grew tired his calls,[ ]" they employed the terroristic threats and harassment statutes improperly to suppress his free speech rights. *Id.* at 20. We disagree.

We first note the subsection of the harassment statute under which Appellant was convicted: "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . communicates

to or about such other person any lewd, lascivious, **threatening** or obscene words, language, drawings or caricatures[.]" *See* 18 Pa.C.S. § 2709(a)(4) (emphasis added).

Our review of relevant authority has not revealed a decision in which a defendant claimed his speech was protected under the First Amendment in order to defend against or overcome a terroristic threats charge. Nonetheless, we note the following relevant authority. In *J.S. v. Bethlehem Area Sch. Dist.*, 807 A.2d 847 (Pa. 2002), the Pennsylvania Supreme Court considered the question of "whether a school district may, consistent with the First Amendment . . . , discipline a student for creating at home, and posting on the Internet, a web site that, *inter alia*, contained derogatory, profane, offensive and threatening statements directed toward [a] teacher[ ] and his principal." *Id.* at 850. The Court noted:

> [W]hile the freedom of speech is rightfully cherished, it is also clear that this right of free speech "is not absolute at all times and under all circumstances." For example, certain types of speech can be regulated if they are likely to inflict unacceptable harm. These narrow categories of unprotected speech include "fighting words,["] speech that incites others to imminent lawless action, obscenity[,] certain types of defamatory speech[,] and "**true threats**." Thus, certain classes of speech may be regulated, or even punished, by government and such action will not violate the Constitution.

*Id.* at 854 (citations omitted) (emphasis added). In considering whether the student's website was a "true threat" beyond the First Amendment's protection, this Court stated:

> A "true threat" is a certain class of speech that the United States Supreme Court has determined is beyond the protective ambit of the First Amendment. A true threat may be criminally punished and the majority of case law that considers whether certain speech constitutes a true threat arises in the context of a conviction for the violation of a criminal statute that prohibits such threats.

*Id.* at 856 (citations omitted).

In the instant appeal, Appellant cites **Commonwealth v. Fenton**, 750 A.2d 863 (Pa. Super. 2000), for the principle that speech containing profanity may nevertheless be protected expression of "one's opinion of a public official's job performance." Appellant's Brief at 19. We agree with the Commonwealth that Appellant's reliance is mistaken. In **Fenton**, the defendant was convicted of terroristic threats and harassment. **Fenton**, 750 A.2d at 864. The passage quoted by Appellant was this Court's analysis of whether the Commonwealth established the element of "**lewd, lascivious or indecent words or language**" under the harassment statute.[6] Appellant's Brief at 18 (quoting **Fenton**, 750 A.2d at 866-67) (emphasis added). The Court observed that to establish "lewd, lascivious, or indecent" language, "the words or language must be of a **sexual nature**, as opposed to being merely 'offensively coarse.'" **Fenton**, 750 A.2d at 866 (emphasis added). As Appellant quoted in his brief, the **Fenton** Court held that the defendant's use of "the 'F word'" "was clearly meant to be emphatic, even

---

[6] The **Fenton** defendant was convicted under the prior version of the harassment statute. **See Fenton**, 750 A.2d at 866; 18 Pa.C.S. § 5504 (harassment), *repealed* Dec. 9, 2002.

coarse," and "in context, **had nothing to do with sex**."  Appellant's Brief at 18 (quoting **Fenton**, 750 A.2d at 867) (emphasis added).

The current version of the harassment statute, under which Appellant was convicted, continues to include the element of communicating lewd or lascivious words or language.  **See** 18 Pa.C.S. § 2709(a)(4).  However, Appellant's conviction was not based on lewd or lascivious words; instead, the court found he communicated **threatening** words or language, in violation of the statute.  **See** 18 Pa.C.S. § 2709(a)(4).  Furthermore, the terroristic threats statute does not include the element of lewd or lascivious words.  Accordingly, we reject Appellant's argument that the holding in **Fenton** applies.

Finally, as discussed above, we agree with the trial court that Appellant's "statements were threats to harm Chief Miller and his family. [Appellant] voiced is intent to shoot at Chief Miller and to send somebody to his house to harm his family."  **See** Trial Ct. Op. at 6.  In light of the violent nature of his messages, we hold that they were "true threats" not protected by the First Amendment.  **See Bethlehem Area Sch. Dist.**, 807 A.2d at 856.

Appellant's final claim is that the court abused its discretion, pursuant to 42 Pa.C.S. § 9754(c)(13), in imposing a probation term barring him from Millvale.  As stated above, Appellant was sentenced on his conviction of terroristic threats only.  Appellant argues this probation condition is not

reasonably related to his rehabilitation and is unduly restrictive of his liberty. He maintains he was not in Millvale when he made the telephone calls. He further contends that a ban from the town of Millvale would prevent him from travelling on Route 28, which is "a major thoroughfare from the City of Pittsburgh to points north and east, including [his] current home in Gibsonia." Appellant's Brief at 30. We hold Appellant is entitled to relief.

Appellant's claim is a challenge to the discretionary aspects of his sentence. This Court has stated:

> Initially, we note that "issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived."

*Commonwealth v. Shugars*, 895 A.2d 1270, 1274 (Pa. Super. 2006) (citation omitted).

At sentencing, Appellant did not object to the probationary term— indeed, any aspect of his sentence—after the court announced the judgment of sentence. *See* N.T. Sentence H'rg at 20. Furthermore, Appellant did not file a post-sentence motion challenging the condition banning from Millvale. Nevertheless, we decline to find waiver, as the trial court discussed the legality[7] of banning Appellant from Millvale, and defense counsel commented

---

[7] Although the trial court questioned the legality of this probationary term, we, as stated above, determine the propriety of this condition to go instead to the discretionary aspect of sentence.

on it:

> THE COURT: . . . I don't know if it is legal to ban him from a community.  Is it legal?
>
> [Appellant's counsel:]  I don't think so, Your Honor.
>
> THE COURT: . . . I don't think it is.  I don't think it is either, but I think I'm going to do it anyway.  I think I'm going to make it illegal under the unique circumstances in this case. . . .

*Id.* at 12-13.  Although defense counsel's objection was brief, in light of the trial court's comments, we decline to find Appellant has waived the issue for failure to raise it before the trial court.  *See Shugars*, 895 A.2d at 1274.

We next consider whether Appellant has

> "set forth in [his] brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[,]" Pa.R.A.P. 2119(f)[, and] demonstrate[d] to this Court "that there is a substantial question that the sentence imposed is not appropriate under this [Sentencing] chapter."  42 Pa.C.S.A. § 9781(b);

*See Commonwealth v. Houtz*, 982 A.2d 537, 539 (Pa. Super. 2009) (some citations omitted).

Appellant has included a proper Pa.R.A.P. 2119(f) statement in his brief.  Appellant's Brief at 5-6.  Additionally, a claim that the trial court abused its discretion in imposing probationary conditions which were not reasonably related to a defendant's rehabilitation raises a substantial question.  *Houtz*, 982 A.2d at 539.  Thus, we consider the merits of Appellant's claim.

- 15 -

Section 9754 of the Sentencing Code, "Order of probation," provides conditions that a court may impose as a part of probation. 42 Pa.C.S. § 9754(c). In the instant case, the trial court cited the catchall provision at Subsection 9754(c)(13), which states: "The court may as a condition of its order require the defendant . . . [t]o satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." *See* 42 Pa.C.S. § 9754(c)(13); Trial Ct. Op. at 8.

This Court has stated:

> A probation order is unique and individualized. It is constructed as an alternative to imprisonment and is designed to rehabilitate a criminal defendant while still preserving the rights of law-abiding citizens to be secure in their persons and property. When conditions are placed on probation orders they are formulated to insure or assist a defendant in leading a law-abiding life.
>
> Moreover, as long as conditions placed on probation are reasonable, it is within a trial court's discretion to order them.

*Houtz*, 982 A.2d at 539-40 (some citations omitted).

In its opinion, the trial court acknowledged its comments at the sentencing hearing concerning the propriety of banning Appellant from Millvale. However, it stated that "under the unique circumstances of this case, such a condition does pass legal scrutiny." Trial Ct. Op. at 9. The court considered the disclosure in the pre-sentence report "that the mayor of Millvale was carrying a gun because he was afraid for himself and his family

- 16 -

due to [Appellant's] threats." Trial Ct. Op. at 8. The court also cited its statement at sentencing that it "was trying to balance [Appellant's] interest in regaining his freedom with the mayor's and the community's interests in personal security and public safety," and had asked Appellant "whether he had a need to go to or live in Millvale." *Id.* at 8-9. Finally, the court cited Appellant's responses "that he was living in a different municipality, he had no compelling need to be in Millvale and he could arrange to have a relative retrieve some of his personal property still located there." *Id.* at 9.

We have not discovered any decisional authority discussing a probation term which bans a defendant from entering a town. However, we agree with Appellant that this condition does not, under Subsection 9754(c)(13), reasonably relate to his rehabilitation. The court's reasons for this term were the protection of the victims and the public, and we discern no association between a prohibition on entering Millvale and Appellant's rehabilitative needs.

Furthermore, we agree that that the probation term unduly restricts his liberty. While the trial court's endeavor to balance Appellant's rights to travel freely with the community's safety was proper, we believe the conditions banning him from having contact with the mayor and police chief

achieved this sentencing goal.[8]  Although Appellant's actions caused alarm, concern, or fear in his victims, his convictions were based on the acts of sending threatening emails and voice messages.  This conduct would not be curtailed by a ban from a town.  For all the foregoing reasons, we vacate the portion of Appellant's sentence banning him from Millvale.

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

Judge Donohue concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/6/2014

---

[8] Appellant concedes that the probation terms barring him from having any contact with the mayor and police chief are reasonable.  Appellant's Brief at 28.