J. S20007/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
 :  PENNSYLVANIA
      v.  :
 :
ERIC ALLEN CUMMINGS,  :  No. 210 WDA 2014
 :
      Appellant  :


Appeal from the Judgment of Sentence, January 9, 2014,
in the Court of Common Pleas of Venango County
Criminal Division at No. CP-61-CR-0000297-2013


BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND WECHT, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:  **FILED MAY 13, 2015**

Appellant, Eric Allen Cummings, appeals the judgment of sentence entered on January 9, 2014, in the Court of Common Pleas of Venango County.  Following a jury trial, appellant was convicted of terroristic threats, 18 Pa.C.S.A. § 2706(a)(1), and sentenced to 16 to 36 months' incarceration.  We affirm.

We will summarize the pertinent facts as gleaned from the record.[1] State Parole Agent Laurie Parker ("Parker") was assigned another agent's caseload after that agent was injured on the job.  (Notes of testimony, 10/15/13 at 43-44.)  Appellant's case was part of that caseload.  (*Id.* at 44.) According to Parker, she met with appellant on February 21, 2013, visited

---

[1] We note with disapproval appellant's failure to provide a "statement of the case" in violation of Pa.R.A.P. 2117.

him at his home on March 19, and was officially assigned appellant's case on April 1.[2] (*Id.*) Parker spoke to appellant on the telephone on April 3, April 25, and April 27, telling him he needed to report to her on his assigned days. (*Id.* at 50-52.) Parker testified that appellant failed to report to her on April 4, April 26, and April 30. (*Id.* at 45-46.) Due to appellant's repeated failure to report, Parker put out a warrant on appellant for absconding. (*Id.* at 52.) On May 14, 2013, appellant called Parker regarding the warrant. (*Id.* at 53-54.) On May 23, 2013, at approximately 4:00 p.m., Parker was notified that appellant was picked up by Sheriff's Deputy Williams and taken to the Venango County Jail. (*Id.* at 54-55.) According to Parker, when she arrived at the jail, her intention was to find out why appellant was not reporting despite instructions to do so. (*Id.* at 55.)

Parker testified that when she arrived at the jail, there was a man that she did not recognize sitting in a chair. (*Id.* at 56-57.) Apparently, appellant had a long beard and overgrown facial hair when Parker first met him. (*Id.*) On May 23, appellant's hair was very smooth and pulled back into a ponytail. (*Id.* at 57.) Once Parker established the man in the chair was appellant, she testified appellant said to her in a gruff voice, "I can't believe you put a fucking warrant on me. This is bullshit." (*Id.* at 58-59.)

---

[2] Parker was permitted to read from her case notes during her testimony. (*Id.* at 48.)

When asked what else he said, Parker testified appellant said, "I had no problems with my prior agents, Agent Powell and Agent Oberlander." "Now you're coming along trying to fuck up the rest of my life." (*Id.* at 63.) Parker said she told appellant, "I didn't come here to fight with you. I didn't come here to argue with you." (*Id.*)

According to her testimony, Parker was next asked by the sergeant at the jail if she was putting appellant on a 48-hour detainer, and she replied that that was her intention but she was now going to put him on a judge's detainer because appellant's demeanor was just not acceptable.[3] (*Id.* at 64.) At that point, appellant made a comment something like, "You're fucking unreal." (*Id.*) Parker testified she replied, "Mr. Cummings, I have nothing further to say to you. This conversation is done." (*Id.*) According to Parker, appellant, who had not been looking at her, turned in his chair to face her and in a low voice said, "Listen, you'll never hear the shot." (*Id.*) Parker, believing appellant had just threatened to shoot her, told the sergeant to call the police. (*Id.*)

Appellant was charged with terroristic threats and, following a jury trial, he was found guilty. Appellant was sentenced to 16 to 36 months' imprisonment. A timely post-sentence motion was filed and denied.

---

[3] During his testimony, Sergeant Thomas Parry explained the difference between a 48-hour detainer and a judge's detainer. A judge's detainer permits holding an absconder for up to five days while an investigation is being conducted. A 48-hour detainer allows an absconder to be held for two days. (Notes of testimony, 10/15/13 at 116.)

Appellant filed a notice of appeal and complied with the trial court's order to file a statement of errors complained of on appeal.

Appellant raises the following issues for our review:

[1.] Was the evidence presented at the time of trial insufficient to sustain the guilty verdict?

[2.] Is the alleged utterance of "Listen, you'll never hear the shot" by [appellant] a threat contemplated under Terroristic Threats, 18 Pa.C.S.A. § 2706(a)(1)?

[3.] Did the trial court abuse it[s] discretion in allowing evidence into the record regarding [appellant's] military designation as a sniper?

[4.] Did the trial court abuse it[s] discretion in allowing evidence into the record about the victim's belief [appellant] could and/or would carry out the alleged threat?

[5.] Did the trial court abuse its discretion in denying the defendant's motion for new trial since the verdict was against the weight of the evidence?

[6.] Is the sentence imposed upon [appellant], although in the standard range, too harsh for the conduct he was found guilty of committing, and thus unreasonable, manifestly excessive and an abuse of [d]iscretion?

Appellant's brief at 5. We have re-ordered appellant's issues for ease of discussion.

In his first two issues, appellant challenges the sufficiency of the evidence. When presented with a challenge to the sufficiency of the evidence, this court's well-settled standard of review is as follows:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses beyond a reasonable doubt.

*In re L.A.*, 853 A.2d 388, 391 (Pa.Super. 2004) (citation omitted).

Section 2706(a)(1) of the Pennsylvania Crimes Code provides that "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). However, the Official Comment states that Section 2706 is not intended "to penalize mere spur-of-the-moment threats which result from anger." *Id.* (Official Comment). "The harm sought to be avoided is the psychological distress that follows an invasion of the victim's sense of personal security. Consequently, '[n]either the [defendant's] ability to carry out the threat nor [the victim's belief] that it will be carried out is an essential element of the crime.'" *Commonwealth v. Sinnott*, 976 A.2d 1184, 1188 (Pa.Super. 2009) (internal citations omitted), *aff'd in part*, *rev'd in part*, 30 A.3d 1105 (Pa. 2011).[4] "In reviewing a statement alleged to be a terroristic

---

[4] On appeal, the Pennsylvania Supreme Court reversed in part and affirmed in part this court's decision in *Sinnott*, as it concluded that the Superior Court erred in reversing *Sinnott*'s conviction of ethnic intimidation (18 Pa.C.S.A. § 2710) and affirmed this court's order in all other respects. *Commonwealth v. Sinnott*, 30 A.3d at 1111. This court's holding regarding the intent to terrorize element of 18 Pa.C.S.A. § 2706(a)(1) remains good law.

threat, we do not look at the statement in a vacuum. Instead, we must look at it in light of the surrounding circumstances." ***Commonwealth v. Anneski***, 525 A.2d 373, 376 (Pa.Super. 1987), ***appeal denied***, 532 A.2d 19 (Pa. 1987).

In his appellate brief, appellant points out he was inebriated, extremely agitated, and was having a heated verbal exchange with Parker at the time of the alleged threat. He further notes he was in jail at the time of the alleged threat, the inference being that he was unable to carry out the threat. Appellant argues that, given the totality of the circumstances, the evidence was insufficient. (Appellant's brief at 11-12.) Additionally, appellant claims that the phrase, "Listen, you'll never hear the shot" is not a terroristic threat because it contemplates future conduct not present immediate conduct. (Appellant's brief at 12).

Appellant cites the case of ***Commonwealth v. Kidd***, 442 A.2d 826 (Pa.Super. 1982), for support. Although this court determined that the evidence was insufficient to prove the intent to terrorize element of terroristic threats, we find ***Kidd*** inapposite to the case ***sub judice***. In ***Kidd***, appellant was inebriated, angry, and in handcuffs when "he told the police he was going to kill them, machine gun them, if given a chance." ***Id.*** at 827. We found that there was no evidence of the intent to terrorize because the appellant's acts were not intended to place the recipient in a state of fear that "agitates the body and mind." ***Id.*** Crucial to this conclusion was

evidence that appellant had spouted threats of violence in the midst of anger. *Id.* (stating that "emergency room personnel interpreted appellant's emotional state as one of anger").

Instantly, unlike **Kidd**, testimony was presented that indicated appellant was not angry, drunk or slurring his words, or in handcuffs. Sergeant Thomas Perry, who was working at the Venango County Prison on the evening appellant was brought in, testified he had interacted with appellant on several prior occasions. (Notes of testimony, 10/15/13 at 108-109.) Sergeant Perry stated that while appellant may have been sarcastic, he was not loud. (**Id.** at 109.) He acknowledged appellant's "tone tends to carry higher than normal people." (**Id.**) Sergeant Perry testified that appellant measured a .094 on a Breathalyzer, however, he was not slurring his words or having any trouble talking. (**Id.** at 114.)

Officer Matthew McConnell of the City of Franklin Police Department also testified. (**Id.** at 117.) He was dispatched to the jail following the report that appellant had made a threat to a probation and parole officer. (**Id.** at 118.) When asked about appellant's tone of voice, he responded: "it didn't strike me as odd because I'm used to talking to people that are upset or that are accused of something and they are telling their side of the story. . . . I didn't take [his tone] as intimidating or that he was upset." (**Id.** at 122.)

Officer McConnell was asked by the court if appellant appeared intoxicated. (**Id.** at 124.) He replied, "[appellant] didn't appear intoxicated at all whenever I spoke to him. He didn't slur his words, no glassy eyes, no stuttering between his statements. He was pretty fluent throughout his thought process, explained to me what happened. So there wasn't any lag or anything that would convince me otherwise." (**Id.**) Additionally, unlike **Kidd**, appellant was not in handcuffs. (**Id.** at 115.)

In light of the foregoing evidence, we reject appellant's claim that he was inebriated, extremely agitated and having a heated verbal exchange with Parker. Instead, we note that according to Parker, appellant, who had not been facing her, turned and looked directly at her when he said in a low voice, "Listen, you'll never hear the shot." Her reaction was to immediately ask that the police be called because she believed appellant had just threatened to shoot her. (Notes of testimony, 10/15/13 at 64.) **See Anneski**, 525 A.2d at 376 (we will not look at a statement in a vacuum as we consider it in light of the surrounding circumstances).

Viewing the circumstances present in this case in the light most favorable to the Commonwealth as verdict winner, we conclude the fact-finder reasonably inferred that appellant intended to terrorize Parker. **See Commonwealth v. Ashford**, 407 A.2d 1328, 1330 (Pa.Super. 1979) (finding the intent to terrorize where the appellant used profanity and made repeated threats on the lives of police officers and their families while

handcuffed in the backseat of the police vehicle, including a threat that he would hunt them down and that they would not know when he would strike).[5]

Appellant combines his next two issues and in one paragraph argues the trial court improperly admitted into evidence the fact that appellant was a military sniper along with the fact that Parker believed appellant would or could carry out the threat. (Appellant's brief at 11.) According to appellant, the admission of both pieces of evidence was improperly before the jury and prejudiced him so that he could not get a fair trial. (*Id.*)

As we have already stated, appellant failed to provide a "statement of the case" in his brief. In the argument portion of his brief, appellant also fails to provide us with the place in the record where an objection was raised to the alleged prejudicial statements. This information must be referenced in the argument portion of the appellate brief. Pa.R.A.P. 2119(e); **Phillips v. Lock**, 86 A.3d 909, 920 (Pa.Super. 2014) (to properly preserve an issue for appellate review, the appellant must include in his or her brief a "statement of the case" including a "statement of place of raising or preservation of issues." Pa.R.A.P. 2117(c)). In the present matter,

---

[5] Appellant's assertion that a threat must present immediate conduct and not something in the future is without merit. **See Commonwealth v. Hardwick**, 445 A.2d 796 (Pa.Super. 1982) (evidence, in prosecution for making a terroristic threat, including making a threat with clear implication that defendant, upon release from prison, would find victim and shoot him, was sufficient to support conviction); **Ashford**, **supra**.

appellant fails to indicate in his brief where the alleged prejudicial statements occurred and whether he lodged an objection. Consequently, this issue is waived.[6] *Commonwealth v. Baker*, 963 A.2d 495, 502 n.6 (Pa.Super. 2008), *appeal denied*, 992 A.2d 885 (Pa. 2010) ("it is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review").

Appellant's next issue concerns the weight of the evidence. In his appellate brief, appellant advised that if we conclude that the subject statement is a terroristic threat, then he believed the trial court properly decided the weight of the evidence issue. (Appellant's brief at 12.) Moreover, appellant fails to present any type of weight argument. As such, we find this issue abandoned.

In his last issue, appellant challenges the discretionary aspects of his sentence. Where an appellant challenges the discretionary aspects of sentence, there is no automatic right to appeal; rather, appellant must petition for allowance of appeal pursuant to 42 Pa.C.S.A. § 9781. *Commonwealth v. Hanson*, 856 A.2d 1254, 1257 (Pa.Super. 2004).

> Before we reach the merits of this [issue], we
> must engage in a four part analysis to determine:

---

[6] We observe that during the course of our review, we failed to locate any reference to appellant being a "Marine sniper." In his opening remarks, defense counsel referred to appellant as a "Marine." (Notes of testimony, 10/15/13 at 36.) Officer McConnell also referred to appellant as a "Marine." (*Id.* at 120.)

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right. Rather, he must petition this Court, in his concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. Finally, if the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa.Super. 2013), *appeal denied*, 77 A.3d 1258 (Pa. 2013).

Here, appellant preserved his claim in a post-sentence motion,[7] and filed a timely notice of appeal. Appellant has included in his brief a concise statement pursuant to Pa.R.A.P. 2119(f). Thus, we proceed to determine whether appellant has presented a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis. *Commonwealth v. Maneval*, 688 A.2d 1198, 1199 (Pa.Super. 1997). In order to establish a substantial question, the appellant must show actions by the sentencing

---

[7] Appellant also presented the issue in his court-ordered Pa.R.A.P. 1925(b) statement.

court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. *Id.* at 1200.

In his Rule 2119(f) statement, appellant argues that his sentence was unreasonable and manifestly excessive. Appellant acknowledges that he received a standard range sentence but argues the trial court failed to carefully consider certain facts, such as, appellant is diagnosed with PTSD, appellant made only one statement, the effect of the sentence on appellant's family, and the effects of alcohol on appellant when he made the statement. (Appellant's brief at 10.) Appellant's argument falls short of raising a "substantial question" for our review with respect to the trial court's exercise of its sentencing discretion.

The trial court explained its reasons for appellant's sentence as follows:

> The sentence was within the standard range of the sentencing guidelines. We were the trial Judge so we had the benefit not only of hearing from the Defendant during the sentence hearing, but also from the victim in the course of the trial. We did attempt to get this Defendant into the State Intermediate Punishment Program (SIP) (61 Pa.C.S.A. § 4101); however, he had a sentence to serve in Mercer County and therefore was not eligible for the SIP. A Pre-Sentence Report had been completed as to this Defendant and was considered. Our sentence was oriented toward the Defendant's need for alcohol treatment and anger management. This Defendant had some history of PTSD and bipolar disorder. We sent, as has been suggested by the Department of Corrections, a distinct memorandum to the Department of Corrections, requesting that

> agency provide programming and treatment for the
> Defendant's special conditions.

Trial court opinion, 5/2/14 at 4-5.

This court has previously held that "where the sentencing court imposed a standard-range sentence with the benefit of a pre-sentence report, we will not consider the sentence excessive." *Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa.Super. 2011); *Commonwealth v. Rhoades*, 8 A.3d 912, 919 (Pa.Super. 2010) (stating that where the trial court had the benefit of a pre-sentence investigation report, "we can assume the [] court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.").

With regard to appellant's claim that the trial court failed to give sufficient weight to mitigating factors such as his PTSD, an argument that the sentencing court failed to consider mitigating factors in favor of a lesser sentence does not present a substantial question appropriate for our review; as such, we need not address it.[8] *Hanson*, 856 A.2d at 1257-1258, citing *Commonwealth v. McNabb*, 819 A.2d 54, 57 (Pa.Super. 2003). *See also Commonwealth v. Griffin*, 804 A.2d 1, 9 (Pa.Super. 2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005), *cert. denied*, 545 U.S. 1148 (2005), citing *Commonwealth v. Williams*, 562 A.2d 1385, 1388 (Pa.Super. 1989) (*en banc*) (an allegation that the sentencing court did not adequately

---

[8] We observe the trial court was well aware of appellant's medical conditions and, in fact, sought help for him.

consider various factors is, in effect, a request that this court substitute its judgment for that of the lower court in fashioning a defendant's sentence). Additionally, the sentencing judge presided over appellant's jury trial and was aware of the facts, *i.e.*, that appellant made one statement to the victim.

Accordingly, there is nothing to support appellant's argument that the sentencing court did not weigh mitigating evidence together with all other factors in fashioning appellant's sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2015