**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Daniel SINNOTT, Appellant.**

Superior Court of Pennsylvania.

Argued March 17, 2009.

Filed June 23, 2009.

Reargument Denied Aug. 27, 2009.

---

Victor Rauch, Philadelphia, for appellant.

Helen Kane, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: BENDER, SHOGAN, JJ. and McEWEN, P.J.E.

### OPINION BY BENDER, J.:

¶ 1 Daniel Sinnott appeals the judgment of sentence imposed following his conviction of Terroristic Threats and Ethnic Intimidation, 18 Pa.C.S. §§ 2706(a), 2710(a) (respectively). Sinnott contends that the Commonwealth failed to adduce sufficient evidence in support of either conviction and asserts accordingly that his judgment of sentence must be reversed. We find the evidence ample to sustain Sinnott's conviction of Terroristic Threats, but insufficient to sustain his conviction of Ethnic Intimidation. Accordingly, we affirm the judgment of sentence in part and reverse in part.

¶ 2 Sinnott's conviction arose out of his angry escalation of a dispute with victim Evelin Rojas (Rojas) after Rojas observed Sinnott in a tirade throwing power tools at the rear steps of the home where Rojas's parents lived. Rojas's father, Benny Rojas, was Sinnott's employer and also owned the home next door where Sinnott lived with his family. Rojas, while visiting with her mother in the kitchen of her parents' home, heard Sinnott outside shouting, swearing, and slamming doors. Although the women at first discounted the display, Rojas eventually ventured from the house to investigate, at which point Sinnott threw power tools that Rojas's father had given to him down on the steps where Rojas was standing. When Rojas admonished Sinnott that he could have hurt her, he berated her as a "fucking bitch" and a whore, and asserted angrily that Rojas's father had cheated him. N.T., 11/26/07, at 8–10. He then insulted Rojas for her supposed ethnicity saying "Fuck you, Mexicans. Go back across the border," and made repeated references to the Alamo. *Id.* Although Rojas corrected Sinnott and told him that she and her family were not Mexican, but Puerto Rican, he continued to rail against her and her family, asserting that they were Panamanian. He also threatened that when her father returned, the two men would go for a drive but that Mr. Rojas would not return as Sinnott was going to kill him.

¶ 3 When Rojas and her mother went to a house across the street to sit on the front steps and smoke, Sinnott followed them and as they sat, approached with an electric drill that he revved as he got nearer, prompting Rojas and her mother to rise and prepare to run to safety. Although Sinnott then diverted his course, Rojas called 911. When the police responded and warned Sinnott to stop his belligerent behavior, he complied only momentarily and resumed after they left, continuing to berate the Rojas women as they sat on the steps, calling them "animals" and "Mexicans" and asserting that "this country belongs to him and his white people." N.T., 6/27/07, at 8. Ultimately, after Sinnott had walked around the block for some forty-five minutes, he charged at Rojas, wielding a hammer as if to strike her. As Rojas grabbed Sinnott's arm to restrain him and shield herself from the impending blow, her long fingernails snagged in his shirt. *Id.* at 10. As Sinnott pushed against her and the two struggled, four of Rojas's nails were ripped from the nail beds, causing her hands to bleed. N.T., 11/26/07, at 25–31. Rojas's nails took several months to grow back. *Id.*

¶ 4 In response to an additional 911 call, the Philadelphia police reported to the scene to find Rojas shaking and injured, and Sinnott barricaded in his house. *Id.* Sinnott would not come out and spoke to the police through the open windows of the house, telling them to "get the fuck out of here" and to check Rojas's "green card." *Id.* Although Rojas's father, having since returned, used his keys to allow the police to enter Sinnott's house, the police found the doors obstructed by furniture piled against them and ultimately entered

through a side door that Sinnott had not thought to block. *Id.* Once inside, the police found an electric drill on the floor next to Sinnott and arrested him for the crimes later charged in the information. *Id.*

¶ 5 Following a preliminary hearing, Sinnott waived his right to a jury and the case proceeded to trial before a judge sitting as finder of fact. The court found Sinnott guilty of Simple Assault, Terroristic Threats, Possessing an Instrument of Crime (PIC), and Ethnic Intimidation, and imposed a sentence of four years' probation for Terroristic Threats consecutive to four months' to twenty-three months' imprisonment for Simple Assault. The court imposed no further penalty for PIC or Ethnic Intimidation. Sinnott then filed this appeal, raising the following questions for our consideration:

1. Was not the evidence insufficient for conviction on the charge of Terroristic Threats, insofar as there was no evidence of a settled intent to terrorize, and appellant's words were the product of transitory anger?

2. Was not the evidence insufficient for conviction on the charge of ethnic intimidation, insofar as there was no evidence that appellant was motivated by the hatred of the victim's race, color, religion, or national origin, or that such hatred was the underlying cause of appellant's behavior?

Brief for Appellant at 3.

¶ 6 Both of Sinnott's questions challenge the legal sufficiency of the evidence. Brief for Appellant at 8. As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000).

"Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty," and may sustain its burden by means of wholly circumstantial evidence. Significantly, "[we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed."

*Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005) (citations omitted). Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Id.* (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1038–39 (Pa.Super.2002)). So long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, his convictions will be upheld. *See Brewer*, 876 A.2d at 1032. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001).

¶ 7 Sinnott's claim challenges the sufficiency of the evidence to sustain his conviction of Terroristic Threats. The Pennsylvania Crimes Code defines Terroristic Threats as follows:

§ 2706. **Terroristic threats**

(a) **Offense defined.**—A person commits the crime of terroristic threats if

the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another;

(2) cause evacuation of a building, place of assembly or facility of public transportation; or

(3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

18 Pa.C.S. § 2706(a). Based on this definition, "the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Commonwealth v. Tizer*, 454 Pa.Super. 1, 684 A.2d 597, 600 (1996). The harm sought to be avoided is the psychological distress that follows an invasion of the victim's sense of personal security. *See id.* Consequently, "[n]either the [defendant's] ability to carry out the threat nor [the victim's belief] that it will be carried out is an essential element of the crime." *Id.; see also Commonwealth v. Hudgens*, 400 Pa.Super. 79, 582 A.2d 1352, 1358 (1990). Similarly, "[i]t is unnecessary for an individual to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." *Id.* Thus, "[a] direct communication between the defendant and the victim is not required to establish the crime[.]" *In re L.A.*, 853 A.2d 388, 392 (Pa.Super.2004).

¶ 8 Sinnott argues that he never intended to evoke terror and that his conduct consisted merely of "spur-of-the-moment" threats made in the heat of anger and that such threats are not proper grounds for conviction under section 2706.

Brief for Appellant at 9 (citing *Commonwealth v. Anneski*, 362 Pa.Super. 580, 525 A.2d 373 (1987)). Upon consideration of multiple excerpts of the victim's testimony, the trial court found both claims unsustainable. We concur. As concerns Sinnott's assertion that he never intended to evoke terror, we need only look to the language of the statute to discern that a defendant need not harbor the specific intent to terrorize his victim—the elements of the offense are established so long the evidence shows even "reckless disregard" for the risk of causing terror. *See* 18 Pa.C.S. § 2706(a)(3).

¶ 9 We find the evidence readily sufficient to establish Sinnott's culpability under the "reckless disregard" standard. The victim's testimony established that Sinnott approached her on two occasions, one time revving a drill and the second time wielding a hammer. On the second occasion, the victim fully expected that Sinnott was going to strike her and raised her hand to prevent the fall of the hammer. Regardless of whether Sinnott intended to place his victim in terror, this testimony establishes that she feared being bludgeoned and reacted in the only way she could to parry what she understood would be a deadly blow. N.T., 6/27/07, at 22 ("If I had not done that, I would have been in the hospital or dead right now, because he would have clobbered me with the hammer."). Sinnott's conduct in wielding the hammer, even if not specifically intended to place his victim in terror, could and did violate the victim's "sense of personal security." *Hudgens*, 582 A.2d at 1358. Even if Sinnott manifestly did not intend that result, his failure to recognize that conduct so extreme would provoke Rojas's obvious fear of injury can only be characterized as reckless disregard. Accordingly, we find the evidence more than ample to establish the intent element of section 2706.

¶ 10 Sinnott's assertion that his conduct consisted merely of "spur-of-the-moment threats" is equally unavailing. In so stating, we recognize that "[section] 2706 was not designed to penalize spur-of-the-moment threats that arise out of anger in the course of a dispute." *Hudgens,* 582 A.2d at 1358 (citing 18 Pa.C.S. § 2706, Official Comment). Nevertheless, "[b]eing angry does not render a person incapable of forming the intent to terrorize." *Commonwealth v. Walker,* 836 A.2d 999, 1001 (Pa.Super.2003). Moreover, even if it did, we find no substantiation in the record for a conclusion that Sinnott's actions were in fact "spur-of-the-moment." Indeed, the record establishes that Sinnott continued the altercation for at least an hour, sometimes walking around the block and other times re-entering his own home, only to venture forth again to continue his belligerence toward Rojas and her mother. Unlike those cases in which passions ignite in a quick and heated exchange of words over deeply emotional matters, *see Anneski,* 525 A.2d at 376 (finding evidence insufficient where defendant threatened to shoot victim in response to victim's threat to run over defendant's children with her car), the record here does not establish circumstances sufficient to negate the intent to terrorize suggested by Sinnott's continued conduct. To the extent that Sinnott had no legitimate quarrel with Evelin Rojas, his continued actions in berating and attempting to frighten her, offer a strong circumstantial inference that his intent fell squarely within the range prohibited by the statute. Accordingly, we find the evidence entirely sufficient to sustain Sinnott's conviction of Terroristic Threats pursuant to 18 Pa.C.S. § 2706.

¶ 11 Nevertheless, we reach a contrary conclusion concerning the defendant's conviction of Ethnic Intimidation. In support of his second question, Sinnott contends that the evidence is not sufficient to establish Ethnic Intimidation as the record fails to establish that Rojas's ethnicity was the primary basis for his behavior. Rather, he contends, his actions were motivated by his ill-will toward Benny Rojas over his belief that Mr. Rojas had unfairly deprived him of work and wages. Brief for Appellant at 11. We concur in Sinnott's interpretation of the record on this point.

¶ 12 Our Crimes Code defines Ethnic Intimidation as follows:

§ 2710. **Ethnic intimidation**

(a) **Offense defined.**—A person commits the offense of ethnic intimidation if, with malicious intention toward the race, color, religion or national origin of another individual or group of individuals, he commits an offense under any other provision of this article or under Chapter 33 (relating to arson, criminal mischief and other property destruction) exclusive of section 3307 (relating to institutional vandalism) or under section 3503 (relating to criminal trespass) with respect to such individual or his or her property or with respect to one or more members of such group or to their property.

\* \* \* \*

(c) **Definition.**—As used in this section "malicious intention" means the intention to commit any act, the commission of which is a necessary element of any offense referred to in subsection (a) motivated by hatred toward the race, color, religion or national origin of another individual or group of individuals.

18 Pa.C.S. § 2710(a), (c).[1]

¶ 13 Our Courts have had limited oppor-

---

**1.** This excerpt reflects the language of section 2710 as passed in 1982. *See* Act of 1982, June 18, P.L. 537, No. 154, § 1. Although the language as enacted was amended in 2002 to include additional categories of persons protected, *see* Act of 2002, Dec. 3, P.L. 1176, No.

tunity to apply section 2710. Nevertheless, our decisions suggest that "malicious intention" as required by the language of section 2710(c) may be found to exist only where the circumstances establish that the defendant was motivated by animus toward the victim's race or ethnicity *and targeted the victim expressly on that basis.* Compare *In re M.J.M.*, 858 A.2d 1259, 1267 (Pa.Super.2004) (affirming dispositional order of delinquency where juvenile's remarks toward Puerto Rican students who rode the school bus with him occurred on several occasions such as to constitute Harassment and "the record clearly indicate[d] that he chose his victims because of their ethnicity"); *and Commonwealth v. Rink*, 393 Pa.Super. 554, 574 A.2d 1078, 1084 (1990) (affirming judgment of sentence based upon defendant's conduct in joining a gang of sixteen white juveniles who ventured to the home of the only black family in the neighborhood and, armed with sticks and two-by-fours, beat both husband and wife while shouting racial epithets and defense of different motivation was not supported by evidence of record) *with Commonwealth v. Ferino*, 433 Pa.Super. 306, 640 A.2d 934, 938 (1994) (concluding that "based on the unique facts at bar . . . we fail to discern such a malevolence on the part of the appellant *directed specifically* at the victim *because of his race* to justify an affirmance of the judgment of sentence for ethnic intimidation").

¶ 14 In this case, Sinnott argues that the record does not establish that he was motivated to commit his crimes on the basis of Evelin Rojas's ethnicity, but was instead agitated by his anger at her father for a wrong he perceived had been committed in his employment relationship. Thus, although Sinnott does not deny his ethnical-

ly charged remarks, he characterizes them as the product of circumstances unrelated to Rojas's ethnicity. Although Sinnott's explanation does not strike us as complete, we recognize as well that section 2710 is a penal statute, our construction of which must be closely circumscribed. See 1 Pa. C.S. § 1928(b)(1) (requiring that penal provisions "shall be strictly construed"); *Commonwealth v. McCoy*, 599 Pa. 599, 962 A.2d 1160, 1169 (2009) (quoting *Commonwealth v. Booth*, 564 Pa. 228, 766 A.2d 843, 846 (2001)) ("[W]here doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt."). Thus given the formulation of the statutory language, which requires that the defendant's acts be "motivated by hatred toward the race, color, religion or national origin of another individual or group of individuals," we are not convinced of the provision's applicability where the testimony and circumstances suggest a more limited motivation.

¶ 15 In this instance, Evelin Rojas's testimony recounts Sinnott's repeated assertion at the time of the altercation that he was angry with Benny Rojas over their employment relationship and was first motivated by his anger in that regard to throw the tools Benny had given him back onto the Rojas property. N.T., 11/26/07, at 8 ("As we were exiting the home, he was, Daniel, was throwing tools that . . . my dad gave them to him . . . He was throwing the tools over the steps."); *id.* at 9 ("And he was like, [saying] oh, that Fucking Benny, he cheated me, I am keeping—every single house on this property is going to belong to me. . . ."). Of course, Sinnott's anger at Benny Rojas in no way justifies his repeated use of the ethnically derogatory terms that pepper this record;

143, that amendment was later deemed unconstitutional by the Commonwealth Court, *see Marcavage v. Rendell*, 936 A.2d 188, 193–94 (Pa.Cmwlth.2007), *aff'd*, 597 Pa. 371, 951 A.2d 345 (2008). Sinnott's conviction continues to stand under the pre-existing version of the statute.

nevertheless, it does suggest that Sinnott's commission of the predicate offense, *i.e.*, Terroristic Threats, upon which his Ethnic Intimidation conviction depends, was driven principally by factors other than the Rojas's ethnicity. Accordingly, we cannot conclude that the record establishes the "malicious intention toward the race, color, religion or national origin of another individual or group of individuals" necessary to conviction of Ethnic Intimidation. The evidence, therefore, is not legally sufficient to sustain this conviction.

¶ 16 For the foregoing reasons, we affirm the judgment of sentence as it applies to Sinnott's conviction of Terroristic Threats, but reverse the judgment of sentence as it applies to his conviction of Ethnic Intimidation.

¶ 17 Judgment of sentence **AFFIRMED** in part, **REVERSED** in part. Jurisdiction **RELINQUISHED.**[2]

---

**2.** Because the trial court imposed no sentence on Sinnott's conviction for Ethnic Intimidation, our decision does not disturb the overall sentencing scheme. Accordingly, we need not remand for re-sentencing.