J-S17028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CURTIS VEASLEY, | |
| Appellant | No. 1162 WDA 2014 |

Appeal from the Judgment of Sentence Entered June 30, 2014,
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0002731-2008

BEFORE:  GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                   **FILED MARCH 24, 2015**

Curtis Veasley ("Appellant") appeals from the judgment of sentence entered on June 30, 2014, after a jury convicted him of burglary and terroristic threats, and the trial court convicted him of persons not to possess firearms.  We affirm.

The trial court summarized the facts and procedural history of this case as follows:

> The charges in this matter arose from an incident that occurred in the city of Lower Burrell, Westmoreland County, Pennsylvania, on December 16, 2007.  Sixteen year-old Nick Ruffner, a high school student, was sleeping on the couch in the living room of his stepgrandparents['] home that morning when

---

[*]  Former Justice specially assigned to the Superior Court.

he was awakened by a loud banging on the front door. The front door suddenly "busted open," and "a guy with a gun came in, started pointing it at me and demanding where my step-dad Sonny was." (TT 88, 90). This individual told Nick to tell him where his step-father was, or he would "pop" him. (TT 90). Nick testified that he was familiar with firearms, and described the gun as being a shiny chrome or silver pistol. (TT 90-91). Nick further related that the man stated that he was looking for Sonny because he had his vehicle, and that he kept pointing the gun at his head. Nick testified that he felt like he was going to die on the couch that day. (TT 92-93, 103). Nick immediately reported the incident to his g[r]andmother and the police, and he later identified [Appellant] as the individual who came into the house with the gun demanding to know where "Sonny" was. (TT 135-136). He also identified [Appellant] at trial. (TT 95-96).

Detective Scott Cardenas of the Lower Burrell Police Department testified that he responded to the Smith residence in Lower Burrell on December 16, 2007. (TT 122-123). He testified that he observed that the front door and door jam[b] were broken out as if the door had been forced. (TT 130-131). He interviewed Nick Ruffner and entered a description of the BOLO (be on the lookout) for an individual meeting the description provided to him. The next morning, Det. Cardenas was contacted by neighboring New Kensington Police Department and was advised that a person matching that description was looking for Sonny Smith in New Kensington, that a Kay Veasley had filed a report of a stolen vehicle, and that [Appellant] was Kay Veasley's husband. Det. Cardenas then prepared a photo lineup that included [Appellant's] photo, and Nick Ruffner later identified [Appellant] as the gun-wielding man who broke through the front door of his grandparents['] house on the morning of December 16, 2007. (TT 133-136).

[Appellant's] attorney suggested that, because [Appellant] believed that Sonny Smith had stolen his wife's car several hours before he entered the Smith residence his entry into that residence was justified.[2] (TT 147-148). Defense counsel argued that [Appellant] was searching for Sonny Smith in an attempt to recover the vehicle, and that he had no intent to commit a crime in the Smith residence or to terrorize Nick Ruffner.

- 2 -

> [2] [Appellant] elected not to testify at trial; however, the fact of the alleged theft of Kay Veasleys' [sic] vehicle and the report that was made to the New Kensington Police Department were admitted by stipulation. (TT 154-155).

Trial Court Opinion, 9/23/14, at 2–4 (footnote 1 omitted).

Following his conviction, Appellant was sentenced to incarceration for an aggregate term of five to ten years plus costs and fines. This timely appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following questions for review:

1. Did the trial court err and commit an abuse of discretion in refusing to provide a jury instruction on Justification pursuant to 18 Pa.C.S.A. 507 (a)(2) in this case?

2. Did the Commonwealth introduce sufficient evidence at trial to establish the requisite element of the crime of Burglary "with intent to commit a crime therein" to justify the conviction and sentencing at that charge, where the Defendant forcibly entered the residence of a third party who had stolen his vehicle, seeking its return?

3. Did the Commonwealth introduce sufficient evidence at trial to establish the requisite element of the crime of Terroristic Threats "intent to terrorize" to justify the conviction and sentencing at that charge?

4. Did the Commonwealth introduce sufficient evidence at trial to establish the requisite elements of the crime of Possession of a Firearm by a Convict to justify the conviction at that count, where the firearm allegedly used in the incident at issue was never found?

5. Was the weight of the evidence in regard to the crimes charged, given the facts establishing entrapment, sufficient to overcome the Commonwealth's burden to disprove Justification and sustain those convictions?

Appellant's Brief at 1.

Appellant's first question challenges the trial court's refusal to instruct the jury on the use of force in defense of property. "In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1257 (Pa. Super. 2014), *appeal denied*, 104 A.3d 1 (Pa. 2014) (quoting ***Commonwealth v. Thomas***, 904 A.2d 964, 970 (Pa. Super. 2006) (citation and brackets omitted)). "It has long been the rule in this Commonwealth that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." ***Id.*** at 1257 (citing ***Commonwealth v. McCloskey***, 656 A.2d 1369, 1374 (Pa. Super. 1995) (citation omitted)).

Appellant requested a jury instruction based on 18 Pa.C.S. § 507, which reads, in relevant part, as follows:

> **(a) Use of force justifiable for protection of property.**--The use of force upon or toward the person of another is justifiable when the actor believes that such force is immediately necessary:
>
> * * *
>
> (2) to effect an entry or reentry upon land or to retake tangible movable property, if:
>
>> (i) the actor believes that he or the person by whose authority he acts or a person from whom he or such other person derives title was unlawfully dispossessed of such land or movable property and is entitled to possession; and

(ii) (A) **the force is used immediately or on fresh pursuit after such dispossession**; or

(B) the actor believes that the person against whom he uses force has no claim of right to the possession of the property and, in the case of land, the circumstances, as the actor believes them to be, are of such urgency that it would be an exceptional hardship to postpone the entry or reentry until a court order is obtained.

\* \* \*

**(c) Limitations on justifiable use of force.**--

(1) The use of force is justifiable under this section only if the actor first requests the person against whom such force is used to desist from his interference with the property, unless the actor believes that:

(i) such request would be useless;

(ii) it would be dangerous to himself or another person to make the request; or

(iii) substantial harm will be done to the physical condition of the property which is sought to be protected before the request can effectively be made.

18 Pa.C.S. § 507 (emphasis in text supplied).

Appellant argues that a justification jury instruction was appropriate because "he only entered the residence at issue to lawfully protect and retrieve his motor vehicle that had been stolen." Appellant's Brief at 4. Contrarily, the Commonwealth argues, "It is clear from the language of § 507 that an immediate return is contemplated" and that "the immediacy and fresh pursuit had staled" in this case. Commonwealth's Brief at 7 (citing

*Commonwealth v. Emler*, 903 A.2d 1273 (Pa. Super. 2006) (instructing that there must be evidence of immediate necessity to recover property for jury instruction)).

Quoting section 507, the trial court disposed of Appellant's challenge with the following analysis:

> Other than the stipulation that a report had been made to the New Kensington Police by Kay Veasley regarding the theft of her motor vehicle, there was no evidence presented by [Appellant] that supported the defense of justification as it related to protection of property. Furthermore, [Appellant's] actions were not taken immediately after the alleged theft of the motor vehicle by Sonny Smith. That incident was to have occurred at approximately 4:30 a.m. on December 16, 2007 in the City of New Kensington. [Appellant's] entry into the Smith residence in the City of Lower Burrell occurred after day light on that same day, hours after the alleged theft of the motor vehicle. . . . Because there was no evidence presented at trial to support the defense of justification, it was not error to deny that requested instruction. It is also clear, however, that even had [Appellant] elected to take the stand and testify as to his version of events, the trial court did not err in determining that the proffered defense did not meet the criterial necessary to invoke 18 Pa.C.S. §507.

Trial Court Opinion, 9/23/14, at 10–11.

Our review of the record confirms support for the trial court's refusal to instruct the jury on the justification defense. *Buterbaugh*, 91 A.3d at 1257. The fact that Appellant forcibly entered the Smith residence and threatened Nick Ruffner, a juvenile ("the victim"), four hours after the alleged theft of Appellant's wife's vehicle indicates he did not "believe[] force [was] immediately necessary" to retake the stolen vehicle, nor did he use the force "immediately or on fresh pursuit" after the vehicle was stolen. 18

Pa.C.S. § 507(a)(2)(ii)(A). Thus, we conclude that Appellant's defense-of-property argument lacks merit.

Appellant's second, third, and fourth questions challenge the sufficiency of the evidence supporting his convictions for burglary, terroristic threats, and persons not to possess firearms. We reiterate that:

> when reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, supports all of the elements of the offense beyond a reasonable doubt. In making this determination, we consider both direct and circumstantial evidence, cognizant that circumstantial evidence alone can be sufficient to prove every element of an offense. We may not substitute our own judgment for the jury's, as it is the fact-finder's province to weigh the evidence, determine the credibility of witnesses, and believe all, part, or none of the evidence submitted.

***Commonwealth v. Sanchez***, 82 A.2d 943, 972 (Pa. 2013) (internal citations omitted).

With regard to his burglary conviction, Appellant contends that the Commonwealth failed to prove the requisite element of intent to commit a crime. Appellant's Brief at 8. The Commonwealth responds that intent can be inferred from "the totality of circumstances" and that it was not required to "specify which crime [Appellant] intended to commit upon entry." Commonwealth's Brief at 9.

A person is guilty of burglary if he enters a building or occupied structure with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter. 18

Pa.C.S. § 3502(b)). "Thus, to prevail on a burglary charge, the Commonwealth is required to prove beyond a reasonable doubt that the offender entered the premises with the contemporaneous intent of committing a crime therein, at a time when he or she was not licensed or privileged to enter." **Sanchez**, 82 A.2d at 972 (citation omitted).

The trial court disposed of Appellant's second claim of error with the following analysis:

> While [Appellant] did not challenge much of the evidence presented, he did maintain that the Commonwealth had failed to establish an essential element of the charge of Burglary, namely, that he entered the Smith residence with the intent to commit a crime therein.
>
> * * *
>
> "The specific intent to commit a crime necessary to establish the intent element of burglary may be found in a defendant's words or conduct, or from the attendant circumstances together with all reasonable inferences therefrom." **Commonwealth v. Eck**, 439 Pa.Super. 530, 540–541, 654 A.2d 1104, 1108–1109 (Pa.Super. 1995), *citing* **Commonwealth v. Tingle**, 275 Pa.Super. 489, 419 A.2d 6 (1980) and **Commonwealth v. Madison**, 263 Pa.Super. 206, 397 A.2d 818 (1979). Futher,
>
>> the Commonwealth is not required to specify what crime a defendant, who is charged with burglary (or attempted burglary), was intending to commit. **Commonwealth v. Von Aczel**, 295 Pa.Super. 242, 441 A.2d 750 (1981). Further, the Commonwealth need not prove the underlying crime to sustain a burglary conviction. **Commonwealth v. Lease**, 703 A.2d 506 (Pa.Super. 1997) (burglary conviction affirmed where defendant was acquitted of the underlying crimes of theft and receiving stolen property because the factfinder could have determined that the defendant entered the residence

with the intent to steal but did not consummate the theft after entry.) *See also*, **Commonwealth v. Alston**, 539 Pa. 202, 651 A.2d 1092, 1095 (1994) (Commonwealth is not required to allege or prove what particular crime the defendant intended to commit after entry into a residence.

**Commonwealth v. Brown**, 886 A.2d 256, 260 (Pa.Super. 2005).

In this case, the Commonwealth did not specify what crime [Appellant] intended to commit in the Smith residence. It was only necessary that the Commonwealth prove beyond a reasonable doubt that he intended to commit some crime. Viewing the evidence in its entirety in a light most favorable to the Commonwealth as verdict winner, it is clear that the Commonwealth sustained its burden. [Appellant] suggested that Sonny Smith had stolen Kay Veasley's car earlier that morning and that he had no criminal intent in entering the residence, but that he was merely trying to retrieve her property. The evidence presented at trial . . . and the reasonable inferences therefrom was sufficient to allow the jury to conclude beyond a reasonable doubt that [Appellant], who broke through the closed and locked front door of a private residence of a third party, brandishing a firearm, pointing it at the head of a juvenile who had been sleeping on a nearby couch, and demanding to see Sonny Smith, had the intent to commit a crime within that residence. The evidence was therefore sufficient to sustain the jury's verdict of guilty as to the charge of burglary.

Trial Court Opinion, 9/23/14, at 3–5.

Upon review of the record, we discern no error in the trial court's conclusion that the Commonwealth sustained its burden of proving beyond a reasonable doubt the intent element of burglary. The record indicates that Sonny Smith allegedly stole Appellant's wife's vehicle at 4:30 in the morning on December 16, 2007. Armed with a pistol, Appellant went to the home of Sonny Smith four hours later to recover the vehicle. Appellant forcibly broke

into the home, brandished a pistol in front of the victim, pointed the weapon at the victim's head, threatened to "pop" him, and then left. The totality of these circumstances supports a reasonable inference, if believed by the jury, that Appellant entered Smith's residence with intent to commit a crime therein. Exercising its prerogative as the fact finder, the jury chose to accept this inference as true. We may not substitute our judgment for the jury's. **Sanchez**, 82 A.2d at 972. Appellant's first sufficiency challenge lacks merit.

Appellant's second sufficiency attack is on the intent element of terroristic threats. "A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S. § 2706(a). Given this definition:

> the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror. The harm sought to be avoided is the psychological distress that follows an invasion of the victim's sense of personal security. Consequently, neither the defendant's ability to carry out the threat nor the victim's belief that it will be carried out is an essential element of the crime. Moreover, it is unnecessary for an individual to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement.

*Commonwealth v. Sinnott*, 976 A.2d 1184, 1188 (Pa. Super. 2009), *reversed on other grounds*, 30 A.3d 1105 (Pa. 2011) (internal quotation marks and citations omitted).

According to Appellant, his remark to the victim, "don't make me pop you," was a spur-of-the-moment threat and not the proper basis for conviction. Appellant's Brief at 8–9 (citing *Commonwealth v. Kidd*, 442 A.2d 826 (Pa. Super. 1982), and *Commonwealth v. Anneski*, 525 A.2d 373 (Pa. Super. 1987)). Distinguishing Appellant's case authority, the Commonwealth points to the lack of evidence that Appellant and the victim were arguing before Appellant made the threat. The Commonwealth contends there was no evidence that Appellant's actions were anything other than a threat of homicide or assault if the victim did not cooperate with locating Sonny Smith. Commonwealth's Brief at 10.

Upon consideration of the victim's testimony, the trial court found Appellant's claim unsustainable:

> The evidence presented at trial established that [Appellant] broke through the closed and locked front door of a private residence of a third party, brandished a firearm, pointed it at a juvenile who had been sleeping on a nearby couch, demanded to see Sonny Smith and, all the while pointing a handgun at the head of the juvenile, told [the victim], "Don't make me pop you." [The victim] testified that he thought that he was going to die that day. This evidence is clearly sufficient to support the verdict of guilty as to the charge of terroristic threats.

Trial Court Opinion, 9/23/14, at 5–6 (citing *Commonwealth v. Kane*, 10 A.3d 327 (Pa. Super. 2010)). We agree.

With regard to Appellant's assertion that he never intended to evoke terror, "we need only look to the language of the statute to discern that a defendant need not harbor the specific intent to terrorize his victim—the elements of the offense are established so long [as] the evidence shows even 'reckless disregard' for the risk of causing terror." *Sinnott*, 976 A.2d at 1188 (citing 18 Pa.C.S. § 2706(a)(3)). Here, Appellant broke through the closed, locked door of a private residence where the victim was sleeping on a couch, approached the victim wielding a pistol, pointed the weapon at the victim's head saying, "[T]ell[] me where your step-dad Sonny is or I'm going to pop you one." N.T., 2/5/14, at 90. The victim recalled, "I felt like I was going to die on the couch that morning." *Id.* at 93. Regardless of whether Appellant intended to place his victim in terror, the testimony establishes that the victim feared being shot and killed. Thus, Appellant's conduct could and did violate the victim's "sense of personal security." *Sinnott*, 976 A.2d at 1188. Even if Appellant did not intend that result, his failure to recognize that conduct so extreme would provoke the victim's obvious fear of injury or death can only be characterized as reckless disregard. Accordingly, we conclude the evidence was sufficient to establish Appellant's intent and culpability under the "reckless disregard" standard of section 2706.

Appellant's assertion that his conduct consisted merely of "spur-of-the-moment threats" is also futile. We recognize that "[s]ection 2706 'was not designed to penalize spur-of-the-moment threats that arise out of anger in

the course of a dispute.'" ***Sinnott***, 976 A.2d at 1189 (quoting ***Commonwealth v. Hudgens***, 582 A.2d 1352, 1358 (Pa. Super. 1990) (citing 18 Pa.C.S. § 2706, Official Comment)). "Nevertheless, 'being angry does not render a person incapable of forming the intent to terrorize.'" ***Id.*** (quoting ***Commonwealth v. Walker***, 836 A.2d 999, 1001 (Pa. Super. 2003)). Even if it did, we discern no support in the record for a conclusion that Appellant's actions were, in fact, "spur-of-the-moment." Indeed, the record establishes that Appellant waited four hours before he began searching for Sonny Smith, broke into the locked residence brandishing a weapon, threatened the victim, and then left. As we observed in ***Sinnott***:

> Unlike those cases in which passions ignite in a quick and heated exchange of words over deeply emotional matters, ***see Anneski***, 525 A.2d at 376 (finding evidence insufficient where defendant threatened to shoot victim in response to victim's threat to run over defendant's children with her car), the record here does not establish circumstances sufficient to negate the intent to terrorize suggested by [Appellant's] . . . conduct.

***Sinnott***, 976 A.2d at 1189. To the extent that Appellant had no legitimate quarrel with the victim who had been asleep on a couch, Appellant's action of breaking into a locked private residence early in the morning, pointing a weapon at the victim's head, and stating, "[T]ell[] me where your step-dad Sonny is or I'll pop you one," provides "a strong circumstantial inference that his intent fell squarely within the range prohibited by the statute." ***Id.*** Thus, we conclude that Appellant's second sufficiency challenge lacks merit.

- 13 -

We note Appellant's passing argument that the terroristic-threat charge should be dismissed pursuant to 18 Pa.C.S. § 3502(d). Appellant's Brief at 9. That statute provides that "[a] person may not be sentenced both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree." 18 Pa.C.S. § 3502(d). In disposing of this claim, we agree with the Commonwealth that "[t]he jury was free to find that any crime could have served as the basis for the burglary." Commonwealth's Brief at 11. Appellant arrived at the Smith residence armed with a pistol, searching for Sonny Smith, and determined to recover his wife's stolen vehicle. Appellant's conduct supports myriad reasonable inferences regarding what crime he intended to commit when he broke into the Smith residence. As the Commonwealth observed, "Given [Appellant's] actions on the morning of December 16, 2007, the crimes could have ranged from homicide, assault, theft, terroristic threats, recklessly endangering another person, and so on." *Id.* Thus, we reject Appellant's argument that his burglary conviction should be dismissed.

Appellant's third sufficiency challenge is to the evidence sustaining his conviction by the trial court for persons not to possess firearms, 18 Pa.C.S. § 6105(c)(2). Appellant stipulated at trial—and concedes on appeal—that he qualifies as a person not to possess firearms given his prior drug conviction.

Appellant's Brief at 10. He contends, however, that "there is no proof in this prosecution that he possessed an actual 'firearm' as required by that statute." *Id.* In response, the Commonwealth asserts that, although "[n]o firearm was recovered or entered into evidence," the victim's testimony was sufficient to establish the only question for the jury: "whether [Appellant] was in possession of a firearm on the date of the incident." Commonwealth's Brief at 12 (citing *Commonwealth v. Robinson*, 817 A.2d 1153 (Pa. Super. 2003)).

According to the trial court:

[the victim] testified credibly that the weapon he saw in [Appellant's] hand "was a pistol." (TT 90). He also testified that he was familiar with guns, and he knew that it was real. (TT 91). He described the gun as being shiny, either silver or chrome. (TT 90). The term "Firearm" has been defined by our legislature as "any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable." *18 Pa.C.S.A. § 6102*. As is often the case, the police did not recover a weapon from [Appellant], nor was the weapon left at the scene. However, [the victim] testified that he is familiar with firearms and he was sure that what he saw was a firearm. (TT 106). The special interrogatory posed to the jury,[1] which was phrased as requested by [Appellant],

_____

1 The special interrogatory read as follows:

**Regardless of your verdict at Count 1 and/or Count 2, please answer the following question:**

*(Footnote Continued Next Page)*

- 15 -

specifically included the statutory definition of "firearm." The jury answered in the affirmative.

* * *

The jury having answered the special interrogatory in the affirmative, this court then found [Appellant] guilty at Count 3. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to sustain the guilty verdict on the Firearms Act violation, 18 Pa.C.S. §6105(c)(2).

Trial Court Opinion, 9/23/14, at 6–7.

Upon review, we discern no basis for disturbing the trial court's conclusion. Believing the victim's testimony, the jury acted within its purview to find that Appellant possessed a gun during the burglary. Verdict, 2/6/14. That finding and Appellant's prior drug conviction provide sufficient evidence to sustain Appellant's conviction of persons not to possess firearms. 18 Pa.C.S. § 6105(c)(2); *accord Robinson*, 817 A.2d at 1162 ("[Victim] testified that all three attackers possessed handguns. This is all that is necessary. That no gun was found on Appellant a half-hour or more after the robbery is not dispositive of the sufficiency of the evidence."). Appellant's contrary argument fails.

_(Footnote Continued)_ ———————————

> Do you find beyond a reasonable doubt that the Defendant possessed a firearm on December 16, 2007 on Fairview Drive in the City of Lower Burrell?

Verdict Sheet, 2/6/14 (statutory definition of firearm omitted).

Lastly, Appellant claims he is entitled to a new trial because "the great weight of the evidence at trial support[s] a conclusion that [he] entered the residence of the car thief Sonny Smith to rightfully retrieve his wife's stolen vehicle." Appellant's Brief at 11. In response, the Commonwealth defers to the trial court's conclusion that Appellant has waived this challenge. Commonwealth's Brief at 14.

> A weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion.

*Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa. Super. 2014) (quoting *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012)) (internal citations omitted).

The trial court addressed Appellant's weight claim as follows:

> [Appellant] has raised for the first time on appeal a challenge to the weight of the evidence.
>
> > A weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa.Super.2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. *Commonwealth v. Sherwood*[,] 603 Pa. 92, 982 A.2d 483, 494 (Pa. 2009).
>
> *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super. 2012).
>
> [Appellant] did not file post-sentence motions in this case, nor did he raise a challenge to the weight of the evidence orally

or in writing prior to sentencing. For these reasons, he has waived his right to challenge the weight of the evidence on appeal.[4]

> [4] [Appellant], through counsel, did raise an oral motion for acquittal at the close of the Commonwealth's case, which was denied by this court on the record.

Trial Court Opinion, 9/23/14, at 11–12.

Upon review, we agree with the trial court's analysis and, adopting it as our own, conclude that Appellant's weight claim is waived.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2015

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA – CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA   )
                                    )
          VS.                  )
                                    )    No.   2731 C 2008
CURTIS VEASLEY,               )
                                    )
            Defendant.   )

## OPINION OF THE COURT ISSUED PURSUANT TO PA.R.A.P. 1925

The Defendant, Curtis Veasley, was found guilty of Burglary (18 Pa.C.S. §3502(a)) and

Terroristic Threats (18 Pa.C.S. §2706(a)(1)) following a jury trial. He was also found guilty by

the court of Person Not to Possess a Firearm (18 Pa.C.S. §6105(c)(2)). He was sentenced on June

30, 2014 to a total period of five to ten years incarceration, and related costs and fines. This

appeal timely followed.

## FACTS:

The charges in this matter arose from an incident that occurred in the city of Lower

Burrell, Westmoreland County, Pennsylvania, on December 16, 2007. Sixteen year-old Nick

Ruffner, a high school student, was sleeping on the couch in the living room of his step-

grandparents' home that morning when he was awakened by a loud banging on the front door.

The front door suddenly "busted open," and "a guy with a gun came in, started pointing it at me

and demanding where my step-dad Sonny was." (TT 88, 90).[1]  This individual told Nick to tell

him where his step-father was, or he would "pop" him. (TT 90).  Nick testified that he was

familiar with firearms, and described the gun as being a shiny chrome or silver pistol. (TT 90-

---

[1] Numerals in parenthesis preceded by the letters "TT" refer to specific pages of the transcript of the testimony presented in the trial of this matter on February 4-6, 2014 before this court, and made a part of the record herein.

1

91). Nick further related that the man stated that he was looking for Sonny because he had his vehicle, and that he kept pointing the gun at his head. Nick testified that he felt like he was going to die on the couch that day. (TT 92-93, 103). Nick immediately reported the incident to his grandmother and the police, and he later identified the defendant Curtis Veasley ("Veasley") as the individual who came into the house with the gun demanding to know where "Sonny" was. (TT 135-136). He also identified Veasley at trial. (TT 95-96).

Detective Scott Cardenas of the Lower Burrell Police Department testified that he responded to the Smith residence in Lower Burrell on December 16, 2007. (TT 122-123). He testified that he observed that the front door and door jam were broken out as if the door had been forced. (TT 130-131). He interviewed Nick Ruffner and entered a description of the BOLO (be on the lookout) for an individual meeting the description provided to him. The next morning, Det. Cardenas was contacted by neighboring New Kensington Police Department and was advised that a person matching that description was looking for Sonny Smith in New Kensington, that a Kay Veasley had filed a report of a stolen vehicle, and that Curtis Veasley was Kay Veasley's husband. Det. Cardenas then prepared a photo lineup that included Curtis Veasley's photo, and Nick Ruffner later identified Veasley as the gun-wielding man who broke through the front door of his grandparents' house on the morning of December 16, 2007. (TT 133-136).

Veasley's attorney suggested that, because Veasley believed that Sonny Smith had stolen his wife's car several hours before he entered the Smith residence his entry into that residence was justified. [2] (TT 147-148). Defense counsel argued that Veasley was searching for Sonny

---

[2] Veasley elected not to testify at trial; however, the fact of the alleged theft of Kay Veasleys' vehicle and the report that was made to the New Kensington Police Department were admitted by stipulation. (TT 154-155).

2

Smith in an attempt to recover the vehicle, and that he had no intent to commit a crime in the

Smith residence or to terrorize Nick Ruffner.

## ISSUES PRESENTED ON APPEAL:

### 1. WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE JURY'S FINDING OF GUILTY ON THE CHARGE OF BURGLARY?

The standard of review for a challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Cahill*, 95 A.3d 298, 300 (Pa.Super. 2014)(citations omitted). While Veasley

did not challenge much of the evidence presented, he did maintain that the Commonwealth had

failed to establish an essential element of the charge of Burglary, namely, that he entered the

Smith residence with the intent to commit a crime therein.

The offense of Burglary is defined, in pertinent part, as follows:

> **Offense defined.**--A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

3

(1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present;

*18 Pa.C.S.A. § 3502(a)(1).* "The specific intent to commit a crime necessary to establish the intent element of burglary may be found in a defendant's words or conduct, or from the attendant circumstances together with all reasonable inferences therefrom." *Commonwealth v. Eck,* 439 Pa.Super. 530, 540-541, 654 A.2d 1104, 1108-1109 (Pa.Super. 1995), *citing Commonwealth v. Tingle,* 275 Pa.Super. 489, 419 A.2d 6 (1980) and *Commonwealth v. Madison,* 263 Pa.Super. 206, 397 A.2d 818 (1979). Further,

> the Commonwealth is not required to specify what crime a defendant, who is charged with burglary (or attempted burglary), was intending to commit. *Commonwealth v. Von Aczel,* 295 Pa.Super. 242, 441 A.2d 750 (1981). Further, the Commonwealth need not prove the underlying crime to sustain a burglary conviction. *Commonwealth v. Lease,* 703 A.2d 506 (Pa.Super.1997) (burglary conviction affirmed where defendant was acquitted of the underlying crimes of theft and receiving stolen property because the factfinder could have determined that the defendant entered the residence with the intent to steal but did not consummate the theft after entry.) *See also, Commonwealth v. Alston,* 539 Pa. 202, 651 A.2d 1092, 1095 (1994) (Commonwealth is not required to allege or prove what particular crime the defendant intended to commit after entry into a residence.)

*Commonwealth v. Brown,* 886 A.2d 256, 260 (Pa.Super. 2005).

In this case, the Commonwealth did not specify what crime Veasley intended to commit in the Smith residence. It was only necessary that the Commonwealth prove beyond a reasonable doubt that he intended to commit some crime. Viewing the evidence in its entirety in a light most favorable to the Commonwealth as verdict winner, it is clear that the Commonwealth sustained its burden. Veasley suggested that Sonny Smith had stolen Kay Veasley's car earlier that morning and that he had no criminal intent in entering the residence, but that he was merely trying to retrieve her property. The evidence presented at trial has been set forth above, and will

4

not be repeated herein. That evidence and the reasonable inferences therefrom was sufficient to allow the jury to conclude beyond a reasonable doubt that Veasley, who broke through the closed and locked front door of a private residence of a third party, brandishing a firearm, pointing it at the head of a juvenile who had been sleeping on a nearby couch, and demanding to see Sonny Smith, had the intent to commit a crime within that residence. The evidence was therefore sufficient to sustain the jury's verdict of guilty as to the charge of burglary. *See, e.g., Commonwealth v. Kane*, 10 A.3d 327 (Pa.Super. 2010).

## 2. WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE JURY'S FINDING OF GUILTY ON THE CHARGE OF TERRORISTIC THREATS?

Veasley likewise argues that the evidence presented at trial was insufficient to sustain the guilty verdict as to the charge of Terroristic Threats, which is defined, in pertinent part:

> **Offense defined.--**A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
> (1) commit any crime of violence with intent to terrorize another;

*18 Pa.C.S.A. § 2706(a)(1)*. Further,

> To be found guilty of terroristic threats, a person must "threaten [ ] to commit any crime of violence with [the] intent to terrorize another or ... in reckless disregard of the risk of causing such terror...." 18 Pa.C.S. § 2706. " '[N]either the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime.' " *Commonwealth v. Hudgens*, 400 Pa.Super. 79, 582 A.2d 1352, 1358 (1990) (quoting *Commonwealth v. Anneski*, 362 Pa.Super. 580, 525 A.2d 373, 376 (1987), *appeal denied*, 516 Pa. 621, 532 A.2d 19 (1987)). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." *Commonwealth v. Tizer*, 454 Pa.Super. 1, 684 A.2d 597, 600 (1996) (citing *Hudgens*, at 1358).

*Commonwealth v. Fenton*, 750 A.2d 863, 865 (Pa.Super. 2000). The evidence presented at trial established that Veasley broke through the closed and locked front door of a private residence of

5

a third party, brandished a firearm, pointed it at a juvenile who had been sleeping on a nearby couch, demanded to see Sonny Smith and, all the while pointing a handgun at the head of the juvenile, told Nick Ruffner, "Don't make me pop you." Ruffner testified that he thought that he was going to die that day. This evidence is clearly sufficient to support the verdict of guilty as to the charge of terroristic threats. *See, e.g., Commonwealth v. Kane*, 10 A.3d 327 (Pa.Super. 2010).

### 3. WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE COURT'S FINDING OF GUILTY ON THE CHARGE OF POSSESSION OF A FIREARM BY A CONVICT?

Veasley also challenges the sufficiency of the evidence presented at trial to sustain the verdict of guilty of 18 Pa.C.S. §6105(c)(2) (Persons not to possess, use, manufacture, control, sell or transfer firearms). Veasley conceded that he had a prior drug conviction that prevented him from legally possessing a firearm; however, he argued that the Commonwealth had presented insufficient evidence to establish that the firearm allegedly possessed by him met the statutory definition of "firearm."

Nick Ruffner testified credibly that the weapon he saw in Veasley's hand "was a pistol." (TT 90). He also testified that he was familiar with guns, and he knew that it was real. (TT 91). He described the gun as being shiny, either silver or chrome. (TT 90). The term "Firearm" has been defined by our legislature as "any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable." *18 Pa.C.S.A. § 6102.* As is often the case, the police did not recover a weapon from Veasley, nor was the weapon left at the

6

scene. However, Ruffner testified that he is familiar with firearms and he was sure that what he saw was a firearm. (TT 106). The special interrogatory posed to the jury, which was phrased as requested by the defendant, specifically included the statutory definition of "firearm." The jury answered in the affirmative. [3]

> When evaluating a sufficiency claim, our standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the factfinder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed. We do not weigh the evidence or make credibility determinations. Moreover, any doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence.

*Commonwealth v. Kane,* 10 A.3d 327, 332 (Pa.Super. 2010), *citing Commonwealth v. Habay,* 934 A.2d 732, 735 (Pa.Super.2007) (citations omitted). The jury having answered the special interrogatory in the affirmative, this court then found Veasley guilty at Count 3. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to sustain the guilty verdict on the Firearms Act violation, 18 Pa.C.S. §6105(c)(2).

## 4. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE THE DEFENDANT'S PROPOSED JURY INSTRUCTION?

Veasley next alleges that the trial court erred in refusing to give his requested jury instruction on the defense of justification. In support of that request, defense counsel relied upon

---

[3] **Regardless of your verdict at Count 1 and/or Count 2, please answer the following question:**

Do you find beyond a reasonable doubt that the Defendant possessed a firearm on December 16, 2007 on Fairview Drive in the City of Lower Burrell? A firearm is defined generally as any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable. For purposes of this question only, the term "firearm" shall include any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive, or the frame or receiver of any such weapon. _____ YES _____ NO

7

the case of *Commonwealth v. Birch*, 644 A.2d 759 (Pa.Super. 1994). That case, however, was clearly distinguishable from the facts at hand. The evidence presented at trial did not justify the use of force to protect property as is defined in 18 Pa.C.S. §507:

**507. Use of force for the protection of property**

**(a) Use of force justifiable for protection of property.**--The use of force upon or toward the person of another is justifiable when the actor believes that such force is immediately necessary:

(1) to prevent or terminate an unlawful entry or other trespass upon land or a trespass against or the unlawful carrying away of tangible movable property, if such land or movable property is, or is believed by the actor to be, in his possession or in the possession of another person for whose protection he acts; or

(2) to effect an entry or reentry upon land or to retake tangible movable property, if:

(i) the actor believes that he or the person by whose authority he acts or a person from whom he or such other person derives title was unlawfully dispossessed of such land or movable property and is entitled to possession; and

(ii) (A) the force is used immediately or on fresh pursuit after such dispossession; or

(B) the actor believes that the person against whom he uses force has no claim of right to the possession of the property and, in the case of land, the circumstances, as the actor believes them to be, are of such urgency that it would be an exceptional hardship to postpone the entry or reentry until a court order is obtained.

**(b) Meaning of possession.**--For the purpose of subsection (a) of this section:

(1) A person who has parted with the custody of property to another who refuses to restore it to him is no longer in possession, unless the property is movable and was and still is located on land in his possession.

(2) A person who has been dispossessed of land does not regain possession thereof merely by setting foot thereon.

8

(3) A person who has a license to use or occupy real property is deemed to be in possession thereof except against the licensor acting under claim of right.

**(c) Limitations on justifiable use of force.--**

(1) The use of force is justifiable under this section only if the actor first requests the person against whom such force is used to desist from his interference with the property, unless the actor believes that:

(i) such request would be useless;

(ii) it would be dangerous to himself or another person to make the request; or

(iii) substantial harm will be done to the physical condition of the property which is sought to be protected before the request can effectively be made.

(2) The use of force to prevent or terminate a trespass is not justifiable under this section if the actor knows that the exclusion of the trespasser will expose him to substantial danger of serious bodily injury.

(3) The use of force to prevent an entry or reentry upon land or the recaption of movable property is not justifiable under this section, although the actor believes that such reentry or caption is unlawful, if:

(i) the reentry or recaption is made by or on behalf of a person who was actually dispossessed of the property; and

(ii) it is otherwise justifiable under subsection (a)(2).

(4) (i) The use of deadly force is justifiable under this section if:

(A) there has been an entry into the actor's dwelling;

(B) the actor neither believes nor has reason to believe that the entry is lawful; and

(C) the actor neither believes nor has reason to believe that force less than deadly force would be adequate to terminate the entry.

9

(ii) If the conditions of justification provided in subparagraph (i) have not been met, the use of deadly force is not justifiable under this section unless the actor believes that:

(A) the person against whom the force is used is attempting to dispossess him of his dwelling otherwise than under a claim of right to its possession; or

(B) such force is necessary to prevent the commission of a felony in the dwelling.

**(d) Use of confinement as protective force.**--The justification afforded by this section extends to the use of confinement as protective force only if the actor takes all reasonable measures to terminate the confinement as soon as he knows that he can do so with safety to the property, unless the person confined has been arrested on a charge of crime.

**(e) Use of device to protect property.**--The justification afforded by this section extends to the use of a device for the purpose of protecting property only if:

(1) the device is not designed to cause or known to create a substantial risk of causing death or serious bodily injury;

(2) the use of the particular device to protect the property from entry or trespass is reasonable under the circumstances, as the actor believes them to be; and

(3) the device is one customarily used for such a purpose or reasonable care is taken to make known to probable intruders the fact that it is used.

*18 Pa.C.S.A. § 507.* Other than the stipulation that a report had been made to the New Kensington Police by Kay Veasley regarding the theft of her motor vehicle, there was no evidence presented by the defendant that supported the defense of justification as it related to protection of property. Furthermore, Veasley's actions were not taken immediately after the alleged theft of the motor vehicle by Sonny Smith. That incident was to have occurred at approximately 4:30 a.m. on December 16, 2007 in the City of New Kensington. Veasley's entry

10

into the Smith residence in the City of Lower Burrell occurred after daylight on that same day, hours after the alleged theft of the motor vehicle.

> [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa.Super. 2014) (*quoting Commonwealth v. Trippett, 932 A.2d 188, 200 (Pa.Super.2007)* and *Commonwealth v. Kerrigan,* 920 A.2d 190, 198 (Pa.Super.2007)). Because there was no evidence presented at trial to support the defense of justification, it was not error to deny that requested instruction. It is also clear, however, that even had the defendant elected to take the stand and testify as to his version of events, the trial court did not err in determining that the proffered defense did not meet the criteria necessary to invoke 18 Pa.C.S. §507.

## 5. WHETHER THE JURY'S VERDICTS WERE AGAINST THE WEIGHT OF THE EVIDENCE?

The defendant has raised for the first time on appeal a challenge to the weight of the evidence.

> [A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; *Commonwealth v. Priest,* 18 A.3d 1235, 1239 (Pa.Super.2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. *Commonwealth v. Sherwood* [603 Pa. 92], 982 A.2d 483, 494 (Pa.2009).

*Commonwealth v. Lofton,* 57 A.3d 1270, 1273 (Pa.Super. 2012). Veasley did not file post-sentence motions in this case, nor did he raise a challenge to the weight of the evidence orally or

in writing prior to sentencing. For these reasons, he has waived his right to challenge the weight of the evidence on appeal.[4]

However, even had Veasley properly preserved this issue for appeal, it is without merit.

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice.

*Commonwealth v. Orie,* 88 A.3d 983, 1015 (Pa.Super. 2014), *citing Commonwealth v. Lyons,* __Pa.__, 79 A.3d 1053, 1067 (2013).

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.' " It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

*Commonwealth v. Thompson,* 93 A.3d 478, 490 (Pa.Super. 2014), *citing Commonwealth v. Horne,* 89 A.3d 277, 285 (Pa.Super. 2014). The jury's verdict at Counts 1 and 2, and this court's verdict at Count 3, were clearly supported by the weight of the evidence and in no way shocks the court's sense of justice.

---

[4] Veasley, through counsel, did raise an oral motion for acquittal at the close of the Commonwealth's case, which was denied by this court on the record.

## CONCLUSION:

For the foregoing reasons of fact and of law, the Defendant's issues raised on appeal do not merit relief.

9/23/14
Date

Rita Donovan Hathaway, Judge

**ATTEST:**

_____
Clerk of Courts

c.c.  File
      Leo Ciaramitaro, Esq., Assistant District Attorney
      Timothy P. Dawson, Esq., Counsel for the Defendant

13