J-S60007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Y.A.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: Y.A.J., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 718 MDA 2018 |

Appeal from the Dispositional Order February 26, 2018
In the Court of Common Pleas of Luzerne County Juvenile Division at
No(s):  CP-40-JV-0000017-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: Y.A.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: Y.A.J., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 719 MDA 2018 |

Appeal from the Dispositional Order Entered February 26, 2018
In the Court of Common Pleas of Luzerne County Juvenile Division at
No(s):  CP-40-JV-0000451-2017

BEFORE:   SHOGAN, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED OCTOBER 23, 2018**

_____

\*   Retired Senior Judge assigned to the Superior Court.

Appellant, Y.A.J., presently twelve years old, appeals from the dispositional order[1] entered on February 26, 2018, in the Court of Common Pleas of Luzerne County. We affirm.

Appellant was charged at docket number JV 451-2017 with receiving stolen property,[2] a misdemeanor of the first degree, as a result of an incident on May 15, 2017. Appellant was alleged to have stolen a bicycle from the garage of Deborah and Christopher Parker. N.T., 2/26/18, at 45, 51. Mr. Parker eventually found the bicycle, damaged, but with its original serial number intact, outside of Appellant's elementary school. *Id*. at 48–49, 52–54. While Appellant initially claimed his parents bought him the bicycle, there was no such supporting evidence offered at the adjudicatory hearing. *Id*. at 55–56, 63.

While on informal probation, Appellant was charged at docket number JV 17-2018 with terroristic threats, a misdemeanor of the first degree, and one count each of three summary offenses—harassment, disorderly conduct,

---

[1] "In juvenile proceedings, the final order from which a direct appeal may be taken is the order of disposition, entered after the juvenile is adjudicated delinquent. The order of disposition in a juvenile matter is akin to the judgment of sentence in a criminal matter in that both are final orders subject to appeal." *In Interest of P.S.*, 158 A.3d 643, 649 (Pa. Super. 2017) (internal citations omitted), *appeal denied*, 174 A.3d 1029 (Pa. 2017).

[2] 18 Pa.C.S. § 3925(a).

and criminal trespass—as a result of an incident on January 7, 2018.[3] Appellant, accompanied by three other juveniles, entered a Save-A-Lot store on January 7, 2018, at approximately 4:15 p.m. N.T., 2/26/18, at 10–12. Appellant began cursing and hurling racial epithets at employees, who told Appellant to leave the store. *Id*. at 6, 7, 10–11. Appellant stepped out of the store, stood at the open doorway and yelled, "I will blast you, nigger, you don't know me," and opened his jacket, revealing the black handle of a firearm. *Id*. at 7–8.

The juvenile court summarized the procedural history as follows:

> [Appellant] had been on informal probation commencing on January 2, 2018[,] under Petition JV# 451-2017 and as a result of the incident alleged in JV# 17-2018 he was detained and placed in shelter care. [Appellant] had a detention hearing before the hearing officer on January 18, 2018[,] and was returned to his home under house arrest with electronic monitoring and directed to comply with a psychological evaluation at Children's Service Center. The evaluation occurred on January 30, 2018.
>
> An adjudication hearing was held on February 26, 2018[,] on both petitions at which time [Appellant] was found factually responsible for all charges contained in the two stated petitions. Having been found factually responsible for the delinquent acts of Receiving Stolen Property under Petition JV# 451-2017 and Terroristic Threats under Petition JV# 17-2018[,] the juvenile was found to be in need of treatment, rehabilitation and supervision and declared a delinquent child in accordance with the Law of the Commonwealth of Pennsylvania. Following testimony and arguments, the [c]ourt ordered placement at Glen Mills Academy.

Juvenile Court Opinion, 4/4/18, at 1–2.

---

[3] 18 Pa.C.S. §§ 2706(a)(1), 2709(a)(1), 5503(a)(1), and 3503(b)(1), respectively.

- 3 -

On March 6, 2018, Appellant filed a post-dispositional motion for reconsideration, which the juvenile court denied on April 4, 2018. Appellant filed timely notices of appeal to this Court. We consolidated the appeals *sua sponte* on May 23, 2018.

Appellant raises the following two issues on appeal:

1. Whether the evidence, in 17-JV-2018, was sufficient to establish that [Appellant] was responsible for terroristic threats where it failed to establish that [Appellant] made a threat or possessed the intent to terrorize?

2. Whether the juvenile court erred or abused its discretion in the disposition imposed where the disposition was neither the least restrictive nor most individualized disposition that could have, under the circumstances, been imposed?

Appellant's Brief at 3.

Appellant's first issue challenges the sufficiency of the evidence to support his adjudication of terroristic threats. When examining a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, this Court employs a well-settled standard of review:

When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

*Interest of P.S.*, 158 A.3d at 650 (citing *In Interest of J.G.*, 145 A.3d 1179, 1188 (Pa. Super. 2016) (internal citations omitted)).

The juvenile court determined that Appellant committed, *inter alia*, terroristic threats with the intent to terrorize another, which is defined as follows:

**(a) Offense defined.**--A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another;

18 Pa.C.S. § 2706. "The elements necessary to establish a violation of the terroristic threats statute are: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize." *Commonwealth v. Walls*, 144 A.3d 926, 936 (Pa. Super. 2016), *appeal denied*, 167 A.3d 698 (Pa. 2017) (citing *Commonwealth v. Vergilio*, 103 A.3d 831, 833 (Pa. Super. 2014)).

Appellant contends that the evidence was insufficient to establish that he either terrorized the victim or intended to terrorize another. Appellant's Brief at 6. His tripartite claim avers, in alternative arguments, that 1) the

victims were unaware of the threat, 2) Appellant did not utter a threat, and 3) Appellant lacked the requisite intent to terrorize. *Id*. at 6–12. We disagree.

Appellant asserts that the only Save-A-Lot employee to testify at the adjudication hearing, Sav-A-Lot night manager Thaliya Dublin, testified that Appellant and his cohorts were cursing at Diane Grigan, also referred to as Ms. Dee,[4] and the store manager, Mr. Jones.[5] Appellant's Brief at 4, 7–8. Appellant maintains that because Ms. Dublin was "not a named victim," the evidence was insufficient to establish that Mr. Jones or Ms. Dee either heard or were made aware of the threat or saw the firearm. *Id*. at 10. Appellant also avers that because he never "mentioned a gun," his statement, "I will blast you, [******], you don't know me," did not "rise to a threat of violence." *Id*. at 11. Lastly, Appellant argues that his threat was a mere "result of transitory anger, rather than a result of an intent to terrorize." *Id*. at 12.

In contrast to Appellant's version, Ms. Dublin testified that Appellant had been in the store on prior occasions and had been asked to leave "a lot of times." N.T., 2/26/18, at 6. Ms. Dublin described the scene on January 7, 2018, as follows:

---

[4] Ms. Dee was hospitalized with the flu on the date of the hearing and did not testify. N.T., 2/26/18, at 9.

[5] Mr. Jones's first name is not identified in the record.

Well, when I came to the situation [Appellant] was like cursing at Miss Jones,[6] telling her, You n........, and Eff you, and all this stuff. I was like, What's going on? And Miss Dee was like, Oh, this kid came again. I was like, Can you please leave the store[?] And then they were asking him to leave the store and as he proceeded out the store I was with him in front of the store. And I was telling him, You're too young, just go, just leave, just go home. And he was still there cursing, arguing.

* * *

Then he continued cursing. He was like, I will blast you, n....., you don't know me. I was telling him, you're too young, just leave, just go home. You don't want to go to jail. And Miss Dee proceed[ed] to call the police. And he was like with his hand in his jacket. That's when I saw like a black handle and I realized it was a gun. And I told Miss Dee, I said that's a gun. I think that's a gun.

*Id*. at 7–8.

Contrary to Appellant's assertion, "[D]irect communication of [a] threat between the perpetrator and the victim is not a requisite element of the crime of terroristic threats." *Commonwealth v. Kelley*, 664 A.2d 123, 127 (Pa. Super. 1995). Moreover, Appellant's assumption that neither Ms. Dee or Mr. Jones could have heard Appellant's threat is not supported in the record. Ms. Dublin described Appellant as standing "[i]n front of the store. In front of the door." N.T., 2/26/18, at 7. She stated Appellant "was telling my co-worker that he gonna blast him and shoot him, and he was telling Miss Dee, You're a bitch, and that stuff." *Id*. at 8. Ms. Dublin described Appellant's threats as

---

6 It is unclear from the record whether the reference to Miss Jones is a typographical error referring to Mr. Jones, the Sav-A-Lot manager, or a reference to another employee.

"Very loud." *Id*. When Appellant made the threat and revealed the gun in his jacket, Ms. Dublin told Miss Dee, "[T]hat's a gun." *Id*. at 8. Accordingly, Appellant's conduct met the requirement that the threat must be communicated to the victim. *Kelley*, 664 A.2d at 127 (defendant's communication of a threat to the victim's secretary, who later told the victim, was sufficient communication of a threat). As noted *supra*, the crime of terroristic threats requires that the defendant communicates a threat "either directly or **indirectly**." 18 Pa.C.S. § 2706(a) (emphasis added). We recently reiterated that "terroristic threats do not have to be communicated directly." *Commonwealth v. Beasley*, 138 A.3d 39, 47 (Pa. Super. 2016), *appeal denied*, 161 A.3d 791 (Pa. 2016). Here, the Commonwealth proved that Appellant made a threat to commit a crime of violence, and the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror. *Commonwealth. v. Sinnott*, 976 A.2d 1184, 1188 (Pa. Super. 2009), *aff'd in part, rev'd in part on other grounds*, 30 A.3d 1105 (Pa. 2011). Because the evidence reflects that Appellant successfully and intentionally communicated his threat, this challenge to the sufficiency of the evidence for his terroristic-threats conviction merits no relief.

We also reject Appellant's claim that his threat was not a threat but merely was nonverbal communication that was insufficient to support the crime of terroristic threats. Appellant's Brief at 10. Appellant's communication constituted both a verbal threat, "I will blast you, [******],"

and a threatening gesture, by moving aside his jacket to reveal a firearm. N.T., 2/26/18, at 7–8.

We similarly reject Appellant's final challenge to the sufficiency of the evidence, that his statement was a mere spur-of-the-moment outburst. Appellant's Brief at 11. Appellant relies upon **Walls**, 144 A.3d 926, claiming that his threat was merely a result of "transitory anger, rather than a result of an intent to terrorize." Appellant's Brief at 12. We disagree. This Court acknowledged numerous times that "[b]eing angry does not render a person incapable of forming the intent to terrorize." **Id**. at 936; **Commonwealth v. Walker**, 836 A.2d 999, 1001 (Pa. Super. 2003); **Commonwealth v. Reynolds**, 835 A.2d 720, 730–731 (Pa. Super. 2003).

Moreover, the fact pattern in **Walls** is dissimilar. We noted therein that the appellant did not specifically threaten harm to the prosecutor presently or in the future, he merely made a spur-of-the-moment statement as he was being led away. **Walls**, 144 A.3d at 937. That is not the case here. Appellant carried a gun into a store from which he previously had been banned, he shouted "I will blast you, [******]," while simultaneously revealing his concealed weapon. N.T., 2/26/18, at 7–8. As the Commonwealth avers, Appellant "cannot now claim innocence because the situation he deliberately [created] allegedly made him angry." Commonwealth's Brief at 14. Like the juvenile court, we find the evidence more than ample to establish terroristic threats.

In his second issue, Appellant asserts that the juvenile court erred or abused its discretion in the disposition imposed because it was "neither the least restrictive nor most individualized disposition" that could have been imposed. Appellant's Brief at 12. As noted, the juvenile court placed Appellant at Glen Mills, a residential facility for the treatment of twelve to fourteen-year-old adolescents that typically is a six-month program. *Id*. at 12, 15; N.T., 2/26/18, at 77. Appellant argues that the Glen Mills disposition is "overly restrictive and punitive," and the juvenile court overlooked several other programs. Appellant's Brief at 13, 15.

Our standard of review of a dispositional order is settled. "[T]he Juvenile Act grants to the court broad discretion in disposition. 42 Pa.C.S.A. § 6341, § 6352; *In re Love*, 646 A.2d 1233 (Pa. Super. 1994)." *Commonwealth v. K.M.-F.*, 117 A.3d 346, 350 (Pa. Super. 2015) (*quoting **In the Interest of A.D.***, 771 A.2d 45, 53 (Pa. Super. 2001) (en banc)). Therefore, we may not overturn a juvenile court's decision unless that discretion was manifestly abused. *In re R.D.*, 44 A.3d 657, 664 (Pa. Super. 2012).

Pennsylvania Rule of Juvenile Court Procedure 512, "Dispositional Hearing," provides, in pertinent part, that the juvenile court state on the record in open court its disposition, the reasons therefore, the terms, conditions, and limitations of the disposition, and if the court removes the juvenile from his home, findings and conclusions of law that formed the basis

of its decision consistent with 42 Pa.C.S. §§ 6301 and 6352. Pa.R.J.C.P. 512(D). This juvenile court explained its disposition as follows:

> The [c]ourt considered all factors listed in Rule 512(D) and found the least restrictive option to be placing [Appellant] at Glen Mills Academy.
>
> The [c]ourt heard inter alia, extensive testimony from juvenile probation Officer Jamie Harned regarding her familiarity with [Appellant] and involvement in his supervision. (N.T.: pg. 65 thru 76), Paul McDonough, (N.T. 76 thru 78), Kathleen Lech, (N.T. 78 thru 81) and Portia Brown, (N.T. 81 thru 88) all incorporated herein by reference. In particular at N.T. 92 thru 94 the [c]ourt outlined its reasons for the disposition at Glen Mills Academy and specifically found:
>
> Out-of-home placement is appropriate and I direct that [Appellant] shall be placed at Glen Mills Young Offender Program.
>
> The following facts that indicate out-of-home placement [is] appropriate include, but not limited to, the serious nature of the offenses. He presents a clear danger to himself and others in the community. There has been a history of failure under community supervision. Home life renders removal imperative, and [Appellant] has treatment needs that require specialized care. This disposition is best suited to [Appellant's] treatment, supervision, rehabilitation and welfare, imposing the minimum amount of confinement that is consistent with the protection of the public, and the rehabilitative needs of this young man, providing balanced attention to the protection of the community, imposition of accountability for offenses committed, and the development of competencies to enable this young man to become a responsible and productive member of the community.
>
> This disposition and placement is necessary to address the serious issues of [Appellant] which cannot be addressed with least restrictive measures. Out-of-home placement was considered, and there has been a history of failure not only in school but in the community. I feel he poses a danger to himself and others. I incorporate the entire record. And I do believe he has specialized needs which will be best addressed at Glen Mills which will address any anger, emotional, behavioral, educational, health, substance issues, inter alia.

> I am concerned for his safety and the safety of others. I incorporate the entire record of this proceeding, including the history of failure under community supervision, and home life, rendering removal imperative, along with the treatment needs as outlined to me today that require specialized attention.

Juvenile Court Opinion, 4/4/18, at 21–22.

At the hearing, Appellant's statements, when he previously was confined at Vision Quest, were read into the record by Appellant's probation officer, Ms. Jamie Harned:

> [Appellant] stated on multiple occasions that he will fight, shout or do whatever he has to. [Appellant] described taking six shots at anybody who tells him to do something he doesn't like. [Appellant] also stated he will punch out his probation [officer] or judge if he doesn't go home. [Appellant] would also describe how he would cut his monitor off if he was on house arrest. [Appellant] stated that his family taught him to live and think this way and he doesn't make threats, they are promises.

N.T., 2/26/18, at 68. Ms. Harned testified that Appellant had not "taken accountability for his negative behavior." *Id*. at 70.

Ms. Harned also described Appellant's behavior at Lynwood Elementary School as consistent with his attitude expressed above. At the dispositional hearing, she identified nine incidents, including a fight with another student that required the intervention of six staff members to subdue Appellant, the destruction of a "de-escalation room," and threats directed to staff. N.T., 2/26/18, at 66–67. Ms. Harned recommended confinement at the Young Offender Program at Glen Mills School. *Id*. at 70.

Based on the foregoing, we conclude that Appellant's issue is devoid of merit. Therefore, we affirm the juvenile court's February 26, 2018 dispositional orders.

Dispositional orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/2018